(134 So. 4)

**NAVCO HARDWOOD CO. v. BECKS.**

1 Div. 599.

Supreme Court of Alabama.

April 16, 1931.

Harry T. Smith & Caffey, of Mobile, for appellee.

BOULDIN, J.

The suit is on the common counts to recover a sum claimed to be due plaintiff for services rendered as manager for the defendant company.

No written contract was made and signed between the parties.

The terms of the contract is one of the litigated questions.

Defendant insists the contract was embodied in the minutes of the proceedings of a stockholders' meeting, August 8, 1928, in the following form:

"It was resolved to employ Mr. F. T. Becks as Manager for as long as the Company is profitable under his management, with the understanding that the Company's contract with him can be terminated by 30 days notice. He shall have a drawing account of $300.00 per month in addition to a residence, the expense of immediate reasonable repairs on which is to be borne by the Company and after that by Mr. Becks. In addition to the drawing account, it is further agreed that if the Company is in operation one year and should the net profits, after insurance, depreciation, taxes and all other normal expense items have been deducted, shall equal $5000.00 per month or $60,000.00 per annum, then said F. T. Becks shall receive 20% of said $60,000.00, less the drawing account above referred to. Should the annual net profits of the Company exceed $60,000.00, Mr. Becks shall be paid 5% of any increase over $60,000.00 net profits up to $120,000.00. Should the net profits of the Company exceed $120,000.00 said Mr. Becks is to receive 25% of every $1,000.00 above that amount. It is the intention of the stockholders that if the contract, with the Grigsby-Grunow Company is profitable and should the management of Mr. Becks prove efficient, that this agreement will be renewed from time to time during the life of his employment."

The claim here involved relates to the net profits from operation under plaintiff's management.

Without dispute plaintiff was discharged without prior notice after some nine months' services and about six months of actual operation of defendant's plant.

Assuming this to be the contract, appellant insists no action on the common counts will lie for alleged share of profits during the period of operation. Plaintiff's contention in this regard was and is that he was discharged without cause and with a fraudulent purpose to defeat his claim for profits.

Not questioning that such a discharge would still render defendant liable for net profits, if earned, in excess of $5,000 per month, appellant insists that recovery can be had only by way of damages for breach of contract.

Inasmuch as the contract was terminated and nothing remained but to ascertain what, if anything, was due to be paid for the service rendered, this phase of the case was triable on the common counts. The issue of wrongful discharge vel non and the sum due, if any, in that event, were matters of evidence presentable under the common counts. Liddel v. Chidester, 84 Ala. 508, 4 So. 426, 5 Am. St. Rep. 387; Wilkinson v. Black, 80 Ala. 329; Elrod Lumber Co. v. Moore, 186 Ala. 430, 65 So. 175.

Appellant further insists that under the evidence the above resolution became in law the contract between the parties. True, prior negotiations looked to approval by the corporate body, and this resolution, although passed in the absence of plaintiff, was later seen by him, and it does not appear he declined to accept its terms. Still, as we consider this entire record, the resolutions of that meeting as a whole, the relation of Colonel Knight to his company, and his broad unquestioned activities, we think it was a jury question to determine whether he was

634

the alter ego of his company in entering into and subsequently modifying the contract; and that this resolution is to be construed in some measure in connection with his negotiations with plaintiff, and his supervision over plaintiff's operations.

Whether the resolution be treated as a limitation on his authority, or directory in character, it cannot be assumed as matter of law that the plaintiff, who had already entered upon his work pursuant to plans which the stockholders were consummating, could not or did not look to Colonel Knight for the terms of his employment.

It was therefore for the jury to determine the issue of fact as to whether the permissible drawing account was raised in course of operations from $300 to $400 per month.

■■ The most litigated question in the case is the method of calculating the net profits arising from plaintiff's operations.

Defendant, Navco Hardwood Company, had at Navco a plant consisting of several units—a sawmill, rotary veneer mill, dimension mill, and dry kilns. The plant was standing idle. An order or contract with Grigsby-Grunow Company for dimension stock for radio cabinets was in prospect. This same resolution authorized the closing of that contract, reserving the right to terminate it, if not profitable.

The employment of a manager subject to such contingency was in mind in framing the above resolution.

The dimension mill, the unit to be operated together with dry kilns, in filling this order was to be put in operation. Later the rotary mill was to be put in operation; meaning, we take it, when business made such operation advisable.

Without question the dimension mill, filling the order of Grigsby-Grunow Company, was the unit, with dry kilns, reconditioned and operated by plaintiff to the time of his discharge. No order to operate any other plant appears.

The returns from the output, with immediate expense of refitting and operating the plant, are not in substantial controversy.

"Net profits, after insurance, depreciation, taxes and all other normal expense items are deducted," furnishes the chief field of controversy.

Appellant, holding plaintiff to be the general manager of the company, seeks deductions for interest on the large outstanding indebtedness of the company, deductions for depreciation on the entire plant, the idle units as well as those in operation, and taxes upon all the property of the company, located, it appears, in three counties.

Appellee, claiming his employment limited to the operation of the dimension plant, insists that deductions for insurance, depreciation, taxes, etc., should be limited accordingly.

Our conclusion is this was a proper issue for the jury, in any event. Whether they find the contract expressed in the resolution above, or a more limited contract with Colonel Knight, it becomes a question of intent to be ascertained by the jury.

It appears in the same resolution that the company had lost its capital; its capital stock was without value. It owed a bonded debt and a large floating debt of long standing.

Was it contemplated that while one unit was operating it must yield a profit of $60,000 per year over and above all overhead, including depreciation of idle units and equipment, and interest on outstanding obligations, before the manager should participate in profit sharing? Or was it contemplated that profits should be figured as in departmental operations, the normal deductions applicable to the unit in operation?

These questions are to be determined in the light of the circumstances. The terms used in the contract (resolution) do not within themselves conclude such inquiry. Paine v. Howells, 90 N. Y. 660; Kleinbaum v. Miller, 202 App. Div. 126, 195 N. Y. S. 821; 39 C. J. pp. 180, 181.

■ Depreciation in fact during the period of operations, based on its condition when they began or when additions were installed, is the test, unless the evidence shows some other concept was in mind.

In figuring the average monthly net profit, whether the nine months' period from the time plaintiff went to work refitting the plant, or the six months' period of actual operations should be considered, was also a question for the jury.

If the contract was embodied in the stockholders' resolution of August 8th, the right to share in the profits was conditioned upon operations for one year, yielding $60,000 profits.

The only theory on which plaintiff could recover under such contract for the shorter period was a wrongful discharge without notice as stipulated.

Without dispute plaintiff overdrew the stipulated amount of $300 per month. This is claimed by defendant to be a good reason for his discharge. There is sharp conflict on the question of the consent of Colonel Knight, representing defendant, to such overdrawing.

But the record does not conclude defendant that this was the sole reason for loss of confidence in and discharge of plaintiff.

■■ The letter of February 7, 1929, addressed to defendant company, but intended for and received by plaintiff, goes directly to the question of competency, efficiency, or reliability in filling the order upon which the operation of the plant depended.

Complaints of such character from the customer must needs have attention of the employer.

The court erred in refusing to admit this letter in evidence. Not that such complaint was conclusive, but addressed to plaintiff himself in course of business, the contents of the letter were evidence, subject to denial or explanation.

The question to plaintiff on cross-examination, "Did Colonel Knight, as President of the Company, write you that if the quality of shipments was not improved, that it would be necessary that he employ a new manager for Navco?" should have been allowed. The witness had disclaimed any complaints about the output. The matter inquired about was collateral, and not objectionable as secondary evidence. Besides, no objection was interposed on that ground. We note, however, that a quite similar question was answered, and refusal of this question was probably harmless.

■ Certain inventories made by plaintiff of stock on hand entered into the calculation of profits, among these certain finished pieces inventoried at some $9,000.

The question on cross-examination, "Don't you know as a matter of fact that it was afterwards sold on the then market immediately after you left there for around $2,000.00 and that this was a fair and reasonable price for it?" was proper and should have been allowed.

■ J. M. House, witness for defendant, qualified as an expert of long experience in operating dry kilns. The questions propounded to him, made the basis of thirty-sixth, thirty-seventh, and thirty-eighth assignments of error, should have been permitted. The evidence called for, as explained by counsel at the time, went to the question of why the plaintiff was discharged; tended to disprove the charge of plaintiff that he was discharged for the fraudulent purpose of defeating his share of profits.

■ The statements of expert accountants made up from the company's books and records, giving data in aid of the jury's ascertainment of the various items entering into a calculation of profits under the different theories of the parties, were admissible subject to proper instructions. It was not for these witnesses to give evidence based on their own views of the contract. That

issue was for the jury under the instructions of the court. Likewise, the extent of depreciation in fact deductible under the contract as they found it was for the jury.

■ Instructions in favor of either party, ignoring the theory of the other within the issues supported by evidence, are invasive of the province of the jury.

The general principles will suffice for guidance upon another trial. No further consideration of the several assignments of error is deemed essential.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.