**WINKELMAN et al. v. GENERAL MOTORS CORPORATION et al.**

District Court, S. D. New York.

Sept. 4, 1942.

See, also, D.C., 39 F.Supp. 826; D.C., 44 F.Supp. 960.

Unger & Pollack, of New York City (Milton Pollack and William F. Unger, both of New York City, of counsel), for plaintiff Augusta Winkelman.

Charles Winkelman, of New York City, (Arthur Berenson and Lawrence Berenson, both of New York City, of counsel), for plaintiff Daniel Nishman and others.

John Thomas Smith, of New York City (David Sher, of New York City, of counsel), for defendant General Motors Corporation and others.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (John W. Davis, Ralph M. Carson, and S. H. Gillespie, Jr., all of New York City, of counsel), for defendant Junius S. Morgan and others.

Root, Clark, Buckner & Ballantine, of New York City (Arthur A. Ballantine, of New York City, of counsel), for defendant Donaldson Brown.

Cravath, DeGersdorff, Swaine & Wood, of New York City (Frederick H. Wood and Thomas A. Halleran, both of New York City, of counsel), for Alfred P. Sloan, Jr.

McCanliss & Early, of New York City (Lee W. McCanliss, of New York City, of counsel), for Albert Bradley.

Raymond F. Garrity, of New York City, for James D. Mooney.

LEIBELL, District Judge.

Since the filing of the findings of fact and conclusions of law, together with the Court's opinion in this case, dated April 10th, 1942, 44 F.Supp. 960, there have been conferences of the attorneys for the various parties, at the request of the defendants, with a view to settling this litigation. Some of these conferences have been held in Chambers where I have been consulted concerning the matters embraced within the proposed settlement, the scope of the general releases and the accord and satisfaction, the parties contributing to the settlement, the amount offered in settlement and the notice of the compromise to be given to the stockholders under Rule 23(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The amount to be paid in settlement is $4,000,000. If accepted, it will be received in full discharge and satisfaction of all claims by General Motors Corporation against those contributing to the settlement, against the named defendants, against all former and present officers and directors, and against all bonus recipients, "by reason of any act or omission of any person or persons done or occurring before August 7, 1941 (the date of the close of trial in the Winkelman case), with respect to any matter or thing connected with or growing out of the General Motors Corporation Bonus Plan, Managers Securities Plan or General Motors Management Corporation Plan, or the compensation by General Motors of any of its officers, directors and employees, or any matter or thing covered by any of the original or amended complaints in the Winkelman case, or any matter or thing considered (whether or not decided) in the opinion, findings or conclusions of the Court in the Winkelman case, or by reason of any expenses borne by General Motors Corporation in connection with the foregoing litigation, * * *." The above is quoted from the offer of settlement dated September 2, 1942.

There were two matters considered in my opinion of April 10, 1942, 44 F.Supp. 960, 983, on which no conclusion of law was made, to which my attention has been directed at the conferences with the attorneys, because it is intended that both those matters shall be included specifically in the settlement. One matter relates to a possible claim growing out of the purchase of large blocks of General Motors common stock by General Motors Corporation through J. P. Morgan & Co. in the latter part of October, 1929, at prices that were $4.50 or $5.21 more per share than the price Managers Securities Company paid J. P. Morgan & Co. for General Motors stock purchased on the same day. Managers Securities Company was owned and controlled by about seventy of the principal executives of General Motors Corporation. The other matter involves the benefits derived by Regent Corporation, by J. J. Raskob and by Pierre S. duPont from the exchange on June 4th, 1930 of 2,400 Class B Managers Securities Company stock (owned by Regent) for 243,392 shares of General Motors common stock, then held by General Motors Corporation for General Motors Management Corporation under a contract of sale dated March 12, 1930.

Concerning the purchases of the blocks of stock from J. P. Morgan & Co. I stated in my April 10, 1942, opinion: "Before concluding an analysis of the transactions listed on Exhibit 56 the following should be noted. The exhibit lists the acquisition of blocks of stock by way of open market purchases through J. P. Morgan & Co. in the Fall of 1929—on October 30th, 140,000 shares for $6,326,000 at an average price of $45.18 a share; on October 31st, 4,800 shares for $214,320 at an average price of $44.65; on November 1st, 4,600 shares for $205,390 at

an average price of $44.65 and on November 4th, 600 shares for $26,790 at an average price of $44.65. Exhibit FFF-3 shows that Managers Securities Company in the Fall of 1929 made the following purchases of General Motors common stock through J. P. Morgan & Co.—On October 30th, 81,700 shares for $3,265,630 at an average price of $39.97; on October 31st, 11,100 shares for $445,665 at an average price of $40.15; on November 4th, 900 shares for $36,135 at an average price of $40.15 a share. A comparison of these prices discloses that for the shares purchased on October 30th General Motors Corporation paid $5.21 a share more than Managers Securities Company; and that for the shares purchased October 31st and November 4th General Motors Corporation paid $4.50 a share more than Managers Securities."

The disparity in these prices had not been raised at the trial or argued in the briefs of counsel. In the discussion on the proposed settlement, affidavits and records have been submitted to me which show that all these stock purchases, both for General Motors Corporation and Managers Securities Company, were made on one day, October 29, 1929, through J. P. Morgan & Co. The dates of purchase given on Exhibit 56 were really dates when the certificates for the stock were received by J. P. Morgan & Co. from the brokers who executed the orders. The Stock Exchange was not open November 1, 1929, one alleged date of purchase; but stock was delivered that day. October 29, 1929, was the heaviest trading day in the history of the New York Stock Exchange. Over sixteen million shares were traded in. Almost a million shares of General Motors common stock were sold that day, the prices varying between a high of 45½ and a low of 33½, with a closing price of 40. Deliveries were spread out over the following week, because of the large trading volume.

Sometime after the market closed October 28th, 1929, and before it opened on October 29th, Mr. Brown of General Motors Corporation, at the suggestion of Mr. Whitney of J. P. Morgan & Co., placed an order to buy 150,000 shares of General Motors common stock for General Motors Corporation. Mr. Brown stated that General Motors Corporation could use that much stock. General Motors from time to time had acquired and held stock for its Bonus Plans and for its Employees Savings and Investment Fund. It is probable that both Mr. Brown and Mr. Whitney thought that the October 29th purchases would tend to support the market and prevent too chaotic trading conditions. Mr. Brown has submitted an affidavit in which he states that General Motors Corporation acquired this stock towards the accumulation of shares for a second Managers Securities Plan. The stockholders had authorized on May 11, 1927, the gradual acquisition of $35,000,000 worth of General Motors common stock for a second Managers Securities Plan to become effective when the first Managers Securities Plan would expire at the end of December, 1930. Open market purchases of stock for this purpose had been made by General Motors Corporation in 1926, 1927 and 1928 at the average rate of about $7,300,000 of stock a year. The 150,000 shares of stock ordered by Mr. Brown on October 29, 1929, cost about $6,772,500. Mr. Brown states that it was not known in October, 1929, that the second Managers Securities Company plan would go into effect a year ahead of time, in the early part of 1930.

The General Motors Corporation purchase order was executed at about the opening prices, October 29, 1929. Later that day Mr. Whitney again spoke to Mr. Brown about buying more General Motors common stock. Mr. Brown replied that General Motors Corporation had bought the limit of its needs but that Managers Securities Company might buy General Motors common stock if it had the cash. Mr. Whitney offered to lend to Managers Securities Company, on behalf of J. P. Morgan & Co., the necessary cash. Later in the day Mr. Brown, acting for Managers Securities Company telephoned Mr. Whitney to buy 100,000 shares of General Motors common stock for Managers Securities Company. The purchases for Managers Securities Company were made in a declining market, at prices much less than General Motors Corporation had paid for its stock at the opening.

Mr. Pollack, the principal trial counsel for the plaintiff stockholders has recently examined the records at the offices of J. P. Morgan & Co. and General Motors Corporation. He states that all purchase orders were executed on October 29, 1929, and that the dates given on Exhibit 56 are actually the dates of delivery of the shares purchased by General Motors Corporation. Mr. Singer, an accountant employed by Mr. Pollack, examined the records of General Motors Corporation and Managers Securi-

ties Company in relation to these stock purchases and he states that the shares in question were purchased on October 29, 1929, and that the difference between that date and the dates reflected in Exhibit 56 arose from delays in delivery.

The 150,000 shares cost General Motors Corporation $6,772,500. They were sold to General Motors Management Company by General Motors Corporation under the March 12, 1930, contract at $40 a share ($6,000,000) with a resulting loss to General Motors Corporation of $772,500. If the purchase of the 150,000 shares by General Motors Corporation on October 29, 1929, had been made solely in an effort to support the market price of its own stock, in the interest of the directors or Managers Securities Company, and not to meet any of the General Motors' own needs, Mr. Brown and Mr. Whitney might be chargeable with having wasted General Motors assets to the extent of the resulting loss. Any such claim, if it could be established, would be barred by the New York six-year Statute of Limitations. Goldstein v. Tri-Continental Corp., 282 N.Y. 21, 24 N.E. 2d 728. But assuming that there is or ever was a valid claim of General Motors Corporation against anyone for anything done in connection with the October 29, 1929, stock purchases, it will be included in the claims covered by the proposed compromise.

Concerning the exchange on June 4, 1930, of 243,392 shares of General Motors common stock for 2,400 Managers Securities Class B shares, owned by Regent Corporation, in which John J. Raskob had a 78% interest and Pierre S. duPont a 22% interest, I stated in my April 10, 1942 opinion:

"Mr. Brown made the exchange with Mr. Raskob on June 4, 1930 without authority of any kind, express or implied, and contrary to the explicit direction addressed to him as Chairman by the resolution of the Finance Committee dated August 5, 1929. Mr. Brown violated his legal obligations as a fiduciary, as a director of General Motors Corporation. So did Mr. Raskob and Mr. Pierre S. duPont who directly benefitted by the exchange. Mr. Smith was also derelict in countenancing and assisting in the transaction.

"Mr. Raskob was a director and a member of the Finance Committee of General Motors Corporation. He had been Chairman of that Committee. Mr. Brown was a director, a member of the Finance Committee and Mr. Raskob's successor as Chairman of the Finance Committee. Mr. Pierre S. duPont was a member of the Finance Committee and of the Board of Directors. Mr. Smith was a director and the general counsel for the corporation.

"Mr. Raskob and Mr. Pierre S. duPont, through their Regent Corporation, profited at least to the extent of $4,261,000 by having the exchange made at the June 4, 1930 price of General Motors common stock ($50 a share) instead of the December 30, 1930 price ($34.25 a share), which was the price at which other Managers Securities Company, Class B stockholders, including General Motors Corporation, could exchange their shares on December 30, 1930.

"On that date General Motors was entitled to receive 12,486 fewer shares of General Motors common stock for the 2,400 shares of Managers Securities Company B stock than it had given Mr. Raskob for the B stock on June 4th, 1930. The 12,486 General Motors shares, at $34.25, a share, were worth $427,645.50 on December 30, 1930. General Motors actually lost that amount on the Raskob transaction. The stock it did receive was used by General Motors to fulfill its April 30, 1930 contract with General Motors Management Corporation. It was replaced in the account from which the 243,392 shares had been taken on June 4, 1930."

I also made the following findings of fact:

"376. General Motors was not holding the 243,392 shares of General Motors stock, delivered in the exchange with Regent Corp., with any view to trading or disposing of such shares other than for ultimate delivery to Management Corporation as part of the 1,375,000 shares which General Motors Corporation had sold to General Motors Management Corporation at $40 a share.

"384. On June 4, 1930, the future exchange equivalent in Motors' stock of Managers Securities B stock upon reorganization of Managers Securities or its liquidation was not and could not be known, because it depended on the future market value of General Motors common stock.

"400. The value of 12,486 shares of General Motors common stock on December 30, 1930, was $427,645.50 at the prevailing market rate of $34.25 per share.

General Motors Corporation was actually damaged to that extent by the Raskob transaction hereinabove described, because it received 12,486 less General Motors common shares for the 2400 Managers Securities B shares on the merger of Managers Securities Company with General Motors Securities Company on December 30, 1930, and the partial liquidation of General Motors Securities Company at that time.

"401. Regent Corporation profited by the transaction in an amount in excess of the damage to Motors. Mr. Raskob had a 78% interest in those profits and Mr. Pierre S. duPont a 22% interest.

"402. The profits to Regent Corporation may have been as high as $4,261,069.50, the difference between 243,392 shares of General Motors common stock at $50 a share ($12,169,600) and 230,906 shares at $34.25 per share ($7,908,530.50), which were the market values of said shares respectively on June 4, 1930, when Regent actually received the 243,392 General Motors shares from General Motors, and on December 30, 1930, when Regent would have become entitled to receive 230,906 General Motors shares from General Motors Management Corporation. To determine the profits of Regent Corporation and of Mr. Raskob and Mr. Pierre S. duPont from the June 4, 1930 exchange of stock would require an accounting."

■ I held there was no fraud, as defined by the cases interpreting subdivision 5 of Section 48, New York Civil Practice Act. Druckerman v. Harboard, 174 Misc. 1077, 22 N.Y.S.2d 595. At the time of the exchange June 4, 1930 the 2400 shares of Managers Securities Company Class B stock were the equivalent of 243,392 shares of General Motors Corporation stock, using the same formula for measuring the one in the terms of the other that had been employed by General Motors Corporation in recapturing Class B stock under the Managers Securities Company bonus plan in years prior to May 1929. Of course, General Motors common stock was the more liquid and more readily marketable. As stated in Finding of Fact No. 381:

"381. There was no ready market for the 2400 shares of Managers Securities B stock on June 4, 1930, and their value as collateral was accordingly limited."

But the assets in back of Managers Securities B stock were General Motors common stock and intrinsically they were equivalents. Consequently I held that in using the same exchange formula there was no actual fraud, but that since the exchange was unauthorized, those responsible for it were liable for any loss to General Motors Corporation, resulting from the transaction. That loss was $427,645.50. Its recovery in this litigation was barred by the New York six-year Statute of Limitations and I so ruled in the Conclusions of Law filed with my April 10, 1942, opinion.

Counsel for some of the defendants have asserted that the intimation in finding of fact No. 402 that Regent Corporation profited, perhaps to the extent of $4,261,069.50, was incorrect and has no basis in law. On the facts, they have submitted schedules of all sales made by Regent Corporation, by Mr. Raskob, by his Radelco Corporation and by Mr. P. S. duPont from the 243,392 shares. Between June 4, 1930, when General Motors stock was $50.00 a share and December 30, 1930, when the price was $34.25 per share: 125,300 shares were sold at prices which netted for the lot $1,876,121.13 in excess of a $34.25 per share price; 22,400 shares were sold at $23,562.10 less than what would have been received at a $34.25 per share price. Mr. P. S. duPont sold no shares prior to December 30, 1930. On that date General Motors Corporation received for the Managers Securities Class B stock its equivalent in General Motors common stock, less 20% held back until January, 1934, pending the determination of certain tax questions. Mr. Raskob, through his Radelco Corp. and Mr. Pierre S. duPont personally still held unsold on January 1, 1934, more than 30% of the General Motors common stock the Regent Corporation had received in the exchange of June 4, 1930.

■ Although the term profit may be inaccurate in describing the advantage to Regent of this exchange, nevertheless there were certain apparent benefits which resulted to Regent, when the June 4, 1930, transaction and the intervening events are viewed as of December 30, 1930. That this benefit was in the nature of a profit for which General Motors Corporation could recover a judgment is not beyond question. Assuming a valid claim arose, there is the further question of the applicable statute of limitations and its effect.

It cannot be urged that there was a loss to General Motors Corporation of a corporate opportunity to sell these 243,392 shares of General Motors common stock in the market and realize on them a higher price than $34.25 a share because this block of stock was being held by General Motors Corporation, as part of 1,375,000 shares, subject to the order of General Motors Management Corporation, according to Mr. Brown's receipt of April 30, 1930. General Motors Corporation already had received on that date $40.00 a share in cash and bonds of the Management Corporation ($55,000,000) for the 1,375,000 shares. The stock had been set aside for the fullfilment of the General Motors Management contract. It had not been bought as a speculation. Decided cases relating to loss of corporate opportunity would not apply to this situation. However, if General Motors Corporation has any claim against anyone arising from the Brown-Raskob transaction of June 4, 1930, and if the claim is not barred by the Statute of Limitations, it will be included in the claims to be settled by the offer of compromise herein.

After considering the affidavits submitted I have concluded that finding No. 401 should be amended and the word "profited" will be changed to "benefited". Finding No. 402 will be omitted altogether. The affidavits show that its figures were incorrect. No new finding will be substituted. If the settlement is not finally approved and a trial of the issues involved in the Brown-Raskob transaction is had in any suit against Mr. Raskob, Mr. Pierre S. duPont, the Regent Corporation or the Radelco Corporation, the trial court will not be embarrassed by any finding in this suit as to the amount of the benefit they derived from the exchange of stock on June 4, 1930.

I am signing an order fixing a date for a hearing on the proposed compromise, because in my opinion it is of such a size that its reasonableness and adequacy should be submitted to the stockholders for their consideration. Annexed to the order is a printed copy of the "offer of settlement" and the "notice and statement of proposed settlement" which, together with the order for the hearing in the settlement, will be mailed to all stockholders. The hearing will be held on October 5th at 10:30 A. M. in Room 110 of this Court House.