89 So.2d 187

## TEXTILE MILLS, Inc.
v.
## S. J. COLPACK.
6 Div. 26.

Supreme Court of Alabama.

Aug. 2, 1956.

Berkowitz, Newfield, Lefkovits & Paden, Birmingham, and Ling & Bains, Bessemer, for appellant.

Edw. L. Ball, Bessemer, for appellee.

LAWSON, Justice.

This is a detinue suit filed in the Circuit Court of Jefferson County, Bessemer Division, on December 26, 1954, by Textile Mills, Inc., against S. J. Colpack, to recover a 1954 Chevrolet station wagon and for damages for its detention.

The sheriff took the station wagon, referred to hereafter as the automobile, into his possession on December 26, 1954, under writ of seizure issued by the clerk based on affidavit and bond made by the plaintiff. The defendant failing to make bond within five days after seizure, the plaintiff on January 6, 1955, made bond and obtained possession of the automobile. § 920, Title 7, Code of 1940.

The complaint is in code form. Form 27, § 223, Title 7, Code of 1940. The defendant pleaded the general issue in short by consent in the usual form. The case was tried before a jury on January 16, 1956. There was a verict in favor of the defendant for the automobile together with $1,200 damages for its detention subsequent to December 26, 1954. The jury in its verdict fixed the alternate value of the automobile at $1,600. Judgment was in accord with the verdict.

The plaintiff's motion for trial was overruled after the defendant consented that damages for detention be reduced to $600. The plaintiff, Textile Mills, Inc., has appealed to this court.

■ The appellant, plaintiff below, insists that the trial court erred to a reversal in refusing to give the general affirmative charge with hypothesis which it requested in writing. In considering this contention of appellant we must review the evidence in the light most favorable to the appellee, the defendant below. Aircraft Sales & Service v. Gantt, 255 Ala. 508, 52 So.2d 388; Hasty v. Hasty, 260 Ala. 90, 69 So.2d 282.

■ The defendant below, the appellee here, claims the automobile in question as a gift. Hence, under the holding of our case of Bowline v. Cox, 248 Ala. 55, 26 So.2d 574, a detinue suit to recover a diamond ring, the burden of proof was on the defendant to establish all facts essential to the validity of the claimed gift by clear and convincing proof. See Collins v. Baxter, 231 Ala. 247, 164 So. 61; Davis v. Wachter, 224 Ala. 306, 140 So. 361; Norsworthy v. Willoughby, 176 Ala. 145, 57 So. 717.

It is without dispute in the evidence that the automobile was purchased in Calhoun, Georgia, on January 7, 1954, four days before the plaintiff concern was incorporated in Alabama, although the invoice issued by the seller at the time of the sale shows the purchaser to have been Textile Mills, Inc. The purchase price of $2,000 was furnished by the daughter of Louis Bresler, who became the secretary-treasurer of the plaintiff upon its incorporation and who began negotiations with the defendant, Colpack, in December of 1953, which negotiations ultimately led to the formation of the plaintiff corporation.

Louis Bresler repaid his daughter and after the formation of the corporation its check was issued to Bresler to reimburse him for the use of his personal funds in connection with the acquisition of the automobile.

At the time the automobile was purchased, Louis Bresler and the defendant Colpack were in and around Calhoun, Georgia, for the purpose of acquiring textile products from the mills in that territory with which to begin operations of their enterprise, Textile Mills, Inc., of which Colpack was made president upon its incorporation. Arnold Lefkovits, an attorney, who handled the legal matters incident to

the incorporation of the plaintiff concern, became its vice president.

The automobile was brought to Birmingham, where Bresler, on January 11, 1954, the same day of the incorporation, had the automobile registered in the name of Textile Mills, Inc. The certificate of registration shows that the automobile was to be used for "passenger use."

On February 11, 1954, a policy of insurance was delivered, covering the automobile, which insurance was made effective as of January 8, 1954. The insurance papers show Textile Mills, Inc., to be the sole owner of the automobile and that it was to be used only for pleasure and business. The insurance premium was paid by the plaintiff corporation on March 10, 1954. The automobile was carried on appellants books as an asset and depreciation was taken thereon by the company throughout the entire time that Colpack was its president. Colpack remained president until his discharge in the early part of December, 1954, a short time before this proceeding was instituted.

On November 11, 1954, Louis Bresler, or some one at his direction, again had the automobile registered in the name of Textile Mills, Inc., and a 1955 motor vehicle license was issued in the corporation's name as was the 1954 license.

There was no evidence produced tending to show that the plaintiff corporation ever executed any writing purporting to transfer to the defendant the title to the automobile. No meeting of stockholders was ever held whereby a gift to Colpack was authorized.

The evidence given by the defendant is to the effect that in December, 1953, while he was engaged in the negotiations with Louis Bresler, the latter promised to give the defendant an automobile as an inducement to leave the position which he then held, to become president of the corporation to be formed. The defendant testified to the effect that as a result of that promise he relinquished the equity which he then held in a 1952 Buick which he held jointly with another. Defendant also testified that on January 7, 1954, on the occasion when the automobile was purchased, Louis Bresler told him that the automobile was his; that it "would be my personally used car."

In brief filed here on behalf of appellee, the defendant below, it is said, *"Prior to the formation of the Corporation,* Mr. Bresler and the Appellee made a trip to Georgia and pursuant to an agreement about an automobile, an automobile was purchased by Mr. Bresler and delivered to the Appellee pursuant to the negotiatio· that the parties had had with reference to the automobile, which is the subject matter of this cause." (Tp. pp. 64, 65, and 66). (Emphasis supplied.) Appellee's brief contains the further statement: "At the time the automobile was purchased and delivered to the Appellee the Corporation was not in existence." The pages of the transcript cited by counsel for appellee in brief filed here on his behalf contain no testimony supportive of the statements made that the automobile was delivered to the defendant prior to the time the corporation was formed or came into existence, and we can find no evidence in the record which tends to support those statements. On the contrary, the record shows by the defendant's answers to interrogatories, and his testimony attempting to explain those answers that the delivery of the automobile did not take place until February, 1954, after the incorporation of the plaintiff. We quote from the defendant's answers to plaintiff's interrogatories, introduced in evidence:

"On or about December, 1953, the president of the plaintiff corporation and one of the directors agreed to buy the defendant a new car to replace the car in which I owned a one-half interest. In February, 1954, Louis Bresler, one of the directors, and the defendant who was then president of the corporation, completed the transaction and the station wagon was then delivered to the defendant."

Bresler denied that he ever promised to give an automobile to the defendant or that he took any action in that regard, but as pointed out above, we are not presently concerned with the conflicts in the testimony. In considering this matter of the refusal of the affirmative charge requested by the plaintiff below, we must take as true the testimony of the defendant concerning Bresler's statements and action.

But it is clear that any promises which Bresler may have made prior to the date of the incorporation of the plaintiff, which were not properly ratified by the corporation, are entirely inefficacious to constitute a gift of property acquired by the corporation after its formation as was the automobile in question.

Bresler, although the secretary-treasurer of the corporation and a member of its board of directors, acquired no stock at the time of incorporation. Two hundred fifty shares of stock were issued, 199 of which went to Bresler's wife, 50 shares were issued to the defendant Colpack and the remaining share was issued in the name of Arnold Lefkovits, the attorney for and vice president of the corporation. Lefkovits later endorsed his stock certificate in blank, and it went either to Louis Bresler or his wife. Colpack retained his 50 shares until his discharge in December, 1954, at which time they were transferred to Mrs. Bresler, who had loaned Colpack the money with which to purchase the stock, which loan had not been paid.

In February of 1954, when the evidence shows the defendant obtained possession of the automobile, he held 50 shares of stock, and if Louis Bresler owned any stock it was only one share. The remainder of the stock was owned by Mrs. Bresler, and the testimony in this record does not support a finding that the stock issued in the name of Mrs. Bresler was actually owned by Louis Bresler. On the contrary, the evidence shows that all of the money which originally went into the corporation belonged to Mrs. Bresler.

So any effort on the part of Louis Bresler and the defendant to give away corporation owned property in February of 1954, although they may have constituted a majority of the board of directors at that time, was ineffectual.

The general rule is stated in 19 C. J.S., Corporations, § 768, p. 125, thusly: " * * * The law does not permit the directors or officers of a corporation to give away its property except where they are the sole stockholders and no rights of creditors are impaired, and unanimous consent is given, * * *. The directors or officers cannot lawfully appropriate the corporate property, funds, or credit to their own use or make any self-serving disposition thereof * * *." In support of the last statement the following Alabama cases are cited: Bronaugh v. Evans, 204 Ala. 153, 85 So. 556; Wood v. Hendon, 16 Ala. App. 327, 77 So. 921.

We have read the record with considerable care, and we are clear to the conclusion that there is no evidence tending to show a valid gift of the automobile by the plaintiff corporation to the defendant Colpack.

We are constrained, therefore, to hold that the trial court erred in failing to give the affirmative instruction requested by the plaintiff.

This view of the case makes it unnecessary for us to consider those assignments of error challenging the action of the trial court in overruling those grounds of the motion for new trial which took the point that the verdict is contrary to the great weight of the evidence.

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.