111 So.2d 1

Harry H. SMITH

v.

D. R. DUNLAP et al.

1 Div. 777.

Supreme Court of Alabama.

April 9, 1959.

Cunningham & Wilkins and Harry H. Smith, Mobile, for appellant.

Chas. B. Arendall, Jr., T. E. Twitty, Jos. M. Hocklander, Hand, Arendall, Bedsole, Greaves & Johnston, Inge & Twitty and D. R. Coley, Jr., Mobile, for appellees.

100

SIMPSON, Justice.

This is a derivative stockholder's suit; the appeal is taken by complainant below from the ruling of the trial court sustaining the demurrer to the bill of complaint as amended. Complainant, a minority stockholder in the respondent corporation, Alabama Dry Docks and Shipbuilding Company, Inc., seeks to recover, on behalf of the corporation, certain funds allegedly due said corporation and misappropriated by the individual respondents, officer-directors of said corporation. It appears from the bill that complainant has made demands on the directors and stockholders to take the necessary steps to recover for the corporation the sums allegedly due but that they have failed and refused.

Some of the wrongs complained of for which complainant seeks relief are the payment of compensation to the individual respondents as officers of the corporation, which sums were allegedly so excessive that they bore no reasonable relation to the value of the services rendered by said respondents and the payment of certain sums of money from the earnings of the corporation into an incentive or bonus fund for employees of said corporation, from the distribution of which fund the individual respondents benefited. We treat these propositions in order.

### Compensation to Officers.

It appears from the averments of the bill that the directors of the respondent corporation in June, 1948 adopted a bonus or incentive plan providing for additional compensation to officers and certain other employees based upon a percentage of the corporation's earnings. Complainant questions the reasonableness of the total compensation, that is, salary and bonus, paid to the individual respondents.

■ In the leading case of Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385, cited by this Court in Edmonson v. First National Bank of Birmingham, 256 Ala. 449, 55 So.2d 338, the rule was enunciated that where the amount of a bonus payment to officers of a corporation has no reasonable relation to the value of service for which it is given, it is in reality a gift and the majority stockholders have no power to give away corporate property against the protest of a minority stockholder.

■ A long line of Alabama cases recognizes the general rule that where officers of a corporation appropriate assets of the corporation to their own use, equity will intervene on behalf of a minority stockholder who is unable to obtain relief within the corporation. See Decatur Mineral & Land Co. v. Palm, 113 Ala. 531, 21 So. 315; Donald v. Manufacturers' Export Co., 142 Ala. 578, 38 So. 841; Glass v. Stamps, 213 Ala. 95, 104 So. 237; Holcomb v. Forsyth, 216 Ala. 486, 113 So. 516; Gettinger v. Heaney, 220 Ala. 613, 127 So. 195; First Nat. Bank of Birmingham v. Forman, 230 Ala. 185, 160 So. 109. See also Edmonson v. First Nat. Bank of Birmingham, supra. The foregoing cases are illustrative of the principle that the receipt of excessive compensation by the officers of a corporation is manifestly an appropriation of corporate assets by said officers to their own use. See also Textile Mills v. Colpack, 264 Ala. 669, 89 So.2d 187; Bronaugh v. Evans, 204 Ala. 153, 85 So. 556.

■ The question of whether the compensation is so excessive that it bears no reasonable relation to the value of services rendered is a question of fact to be resolved on final hearing. It was observed in Gallin v. National City Bank of New York, 152 Misc. 679, 273 N.Y.S. 87, 114; 155 Misc. 880, 281 N.Y.S. 795, that "To come within the rule of reason the compensation must be in proportion to the executive's ability, services and time devoted to the company, difficulties involved, responsibilities assumed, success achieved, amounts under jurisdiction, corporate earnings, profits and prosperity, increase in volume or quality of business or both and all other relevant facts and circumstances; nor should it be unfair to stockholders in unduly diminishing dividends properly payable." See also Decatur Mineral & Land Co. v. Palm, supra; Clamitz v. Thatcher Mfg. Co., 2 Cir., 158 F.2d 687, 692, certiorari denied 331 U.S. 825, 67 S.Ct. 1316, 91 L.Ed. 1841; Winkelman v. General Motors Corp., D.C., 44 F.Supp. 960, 969; 5 Fletcher Cyc. of Corporations, §§ 2133, 2143; 13 Am.Jur. Corporations, §§ 1037, 1039; 27 A.L.R. 300; 40 A.L.R. 1438; 88 A.L.R. 755; 164 A.L.R. 1125.

In the case at bar, there are twelve directors of the respondent corporation, four of whom were also officers of the corporation during the period complained of. These four officer-directors are made parties respondent.

After careful study and analysis of the leading cases, text writers, and student comment in law reviews, and after reconciling some of the inconsistencies therein, we conclude that the following principles govern cases of this nature: The amount of compensation to be paid to an officer of a corporation is, in the first instance, within the business discretion of the corporation's board of directors and with this discretion the courts are loath to interfere; generally the decision of the directors as to the amount of such compensation is final; where it appears, however, that the directors have not acted in good faith or that the compensation fixed by them is so excessive that it bears no reasonable relation to the services for which it is given, courts of equity have the power to inquire whether and to what extent payment to the officers constitutes misuse and waste of corporate assets; the power to inquire will, therefore, be exercised by the courts upon a clear showing of excessiveness of compensation or bad faith on the part of the directors; but courts are reluctant and will proceed with great caution in exercising the power to "prune" the payments since it is not intended that a court should be called upon to make a yearly audit and adjust salaries; nor is such an inquiry merely to substitute the court's discretion for the discretion of the directors if that has been honestly and fairly exercised. Rogers v. Hill, supra; Winkelman v. General Motors Corp., supra; Gallin v. National City Bank of New York, supra; McQuillen v. National Cash Register Co., D.C., 27 F.Supp. 639, affirmed 4 Cir., 112 F.2d 877; Heller v. Boylan, Sup., 29 N.Y.S. 2d 653, affirmed 263 App.Div. 815, 32 N.Y. S.2d 131, appeal denied 263 App.Div. 852, 32 N.Y.S.2d 1011; Diamond v. Davis, Sup., 38 N.Y.S. 103; Darmana v. New Orleans Stock Yard, Inc., 226 La. 897, 77 So.2d 528; 5 Fletcher Cyc. of Corporations, §§ 2122, 2133, 2138, 2143; 13 Am.Jur. Corporations, §§ 1027, 1039; 27 A.L.R. 300; Washington, "Executive's Living Wage", 54 Harvard L.Rev. 733; Washington, "The Corporate Executive and His Profit Sharing Contract", 50 Yale L.J. 35; 38 Cal.L.Rev. 906; see also Alabama cases, supra.

We conclude that complainant, a minority stockholder, has sufficiently stated a case for the intervention of equity on behalf of the corporation to inquire as to whether the compensation received by the individual respondents is so excessive that it bears no reasonable relation to the value of the services performed by them. This does not mean, however, that the compensation is per se so excessive; it is a question of fact and the compensation having been regularly fixed by the directors, the burden of proving that it is so excessive is on complainant. Darmana v. New Orleans Stock Yards, Inc., supra; 5 Fletcher Cyc. of Corporations, § 2181; 13 Am.Jur. Corporations, § 1039.

### Ratification.

Respondents contend that the action of the board of directors and the majority stockholders in refusing to sue precludes or bars complainant, a minority stockholder, from bringing this action.

It is a universal rule that neither the board of directors nor the majority stockholders can, over the protest of a minority stockholder, give away corporate property. Textile Mills v. Colpack, supra; Bronaugh v. Evans, supra; McQuillen v. National Cash Register Co., supra; Heller v. Boylan, supra. And where the amount of compensation paid to an officer of a corporation has no reasonable relation to the value of the services rendered therefor, it is in reality a gift. Diamond v. Davis, and other cases, supra. It follows that the action of the majority stockholders and the directors in refusing to bring suit or in ratifying the alleged excessive compensation cannot, on proper allegations, preclude intervention by a court of equity to inquire into the reasonableness, vel non, of said compensation at the instance of a minority stockholder. Rogers v. Hill, supra; Collins v. Hite, 109 W.Va. 79, 153 S.E. 240; Toebelman v. Missouri-

Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016; Darmana v. New Orleans Stock Yard, Inc., supra; Decatur Mineral & Land Co. v. Palm, supra; Gettinger v. Heaney, supra; First Nat. Bank of Birmingham v. Forman, supra; Fletcher, Cyc. of Corporations, Vols. 5 and 13, §§ 2122, 2143, 5832.

American Life Ins. Co. v. Powell, 262 Ala. 560, 80 So.2d 487 should not be interpreted as holding that majority stockholders by refusing to bring for or by ratifying a gift of corporate assets by the officers thereof can preclude a minority stockholder from seeking on behalf of the corporation, the recovery of said assets from the recipient officers. The holding of the American Life Ins. Co. v. Powell case, supra, was that the complainant, a minority stockholder, should have made an appeal to the stockholders before resorting to equity and that such an appeal was necessary without regard to the nature of the acts complained of.

In Continental Securities Co. v. Belmont, 206 N.Y. 7, 99 N.E. 138, 51 L.R.A.,N.S., 112, 113, cited by the court in the American Life case, supra, it was observed that some courts have drawn a distinction between acts that are and those that are not capable of ratification and, where the acts are not capable of being ratified, that is, where the refusal to bring suit on account of such acts by majority stockholders does not preclude a minority stockholder from so doing, no appeal to the stockholders is necessary. But, as was pointed out in the Annotation, the Alabama courts have not made this distinction, and the rule in this jurisdiction is that as a predicate for a minority stockholder's derivative suit, an appeal to the stockholders is necessary, no sufficient excuse for not so doing being shown—and this without regard to the nature of the subject matter of the suit. The requirement of an appeal to the stockholders as a prerequisite for a minority stockholder's derivative suit has long been the prevailing rule in this jurisdiction. By continu-

ing this requirement in the American Life case, supra, this Court was merely following the principle of *stare decisis*. Such resort to the stockholders is necessary, as heretofore pointed out, without regard to the acts complained of, that is, those that are, and those that are not, capable of ratification. And, as was also observed in the American Life case, that even where fraud is charged, an appeal to the stockholders before bringing suit has long been required in this jurisdiction. It was not the intention of this Court to hold that a majority of the stockholders could by ratifying fraudulent acts or by refusing to seek redress for such acts thereby preclude a minority stockholder from bringing suit.

In 13 Fletcher Cyc. of Corporations, § 5822, cited by this Court in the American Life case, the general rule is enunciated that the refusal of the stockholders to sue may constitute a noninterferable act of discretion or a breach of trust; it turns on the circumstances. Mr. Fletcher, in another section states that "the Courts have no power to interfere with the action of the stockholders or directors in fixing compensation unless there is injustice, oppression, or circumstances amounting to fraud, or a clear abuse of power. However, the courts will take a hand in the matter at the instance of the corporation or of stockholders in extreme cases. * * * Minority stockholders may question such illegal acts, even though ratified by the majority of the stockholders." 5 Fletcher, Cyc. of Corporations, § 2122, pp. 518, 519, 520, 522.

In Kessler & Co. v. Ensley & Co., C.C., 129 F. 397, also cited by this Court in the American Life case, refusal of the directors to bring suit was, under the facts there presented, held to be a breach of trust and not binding on the dissenting stockholders. Judge Jones, writing for the court, observed that the directors under no circumstances have the right to gratuitously and capriciously abandon or give away the rights of the corporation, either to a stockholder or to a stranger and, where it ap-

pears that they have done so, a clear breach of trust is shown and the courts will disregard such action.

### Errors in Computing Payments Into Incentive (Bonus) and Pension Funds.

■ Complainant avers that the incentive or bonus plan providing for the payment by the corporation of additional compensation to officers and certain other employees was to be based upon the earnings of the corporation. He further avers that the individual respondents, officers of the corporation, calculated the amount of the contribution to be made to the bonus fund by the corporation and in so calculating included certain items that could not be interpreted as earnings under the written terms of the plan. It also appears from the bill that said respondents did not disclose to the directors or to any one the amount contributed or how they arrived at said amount but maintained complete secrecy with respect thereto. It further appears that the respondents benefited from the distribution of the fund.

One of the alleged mistakes in calculating about which complainant complains arises out of the sale in 1955 of a capital asset of the respondent corporation, that is, the sale of the stock of Waterman Steamship Corporation which stock was purchased by the respondent corporation in 1931. It appears that respondents in computing the contributions to the incentive and pension funds treated the profits realized therefrom, $433,000, as earnings of the respondent corporation with the result that $59,-634.20 of said profit was contributed to the incentive fund and $199,720 was contributed to the pension fund.

It also appears that party respondent Dunlap in a letter to the stockholders stated as follows: "I also wish to call to your attention in the statement the increase in the amount of 'Income from Investments and Rents'. This amount includes proceeds from the sale of an investment in Waterman stock, which netted a profit of approximately $433,000.00 after federal and state income taxes. Such stock was purchased at the time of the formation of that company in order to help build up the commerce and development of the port. This money also will be retained in the capital of the company for future investment in similar enterprises which help the growth of our business and the Port of Mobile".

The purpose of the incentive plan of additional compensation as declared in said plan was: "Purpose: To provide for the continuation of an annual incentive fund, based on *earnings* for the payment of additional compensation to officers and other employees as a reward for results accomplished and an incentive to further efforts toward increasing the profits of the corporation." (Emphasis supplied.)

The plan also provides, "Computation of Amount To Be Distributed: When the estimated *earnings* of the company in any fiscal year amount to $500,000.00 or more there shall be made available for the purpose of the payment of additional compensation to officers and employees eligible to participate in the plan, a sum equal to:

"10% of the first $2,500.00 of such earnings, Plus 9% of the next $5,000.00 of such earnings, Plus * * *.

"* * * For the purpose of additional compensation, 'Earnings' shall mean the net income of the company before division of profits under contract with Todd Shipbuilding Corporation * * *."

Complainant also sets out the pertinent provisions of the pension plan of the respondent corporation calling for contribution to the pension fund by the corporation of a specified percentage of the corporation's "net profit after taxes". It is also averred that a copy of the pension fund plan was sent to each of the participants and as a part thereof, there was a letter addressed to the employees of the corporation from the president of the corporation in which it was stated: "* * * Your attention is called to the fact that this being a profit sharing plan, the company

must realize profits from its *operations* in order to make contributions to the Trust Fund, therefore, it is to your advantage to put forth your best efforts, since the retirement income payable to employees qualifying under the plan depends upon the amount of contributions made by the company out of profits." (Emphasis supplied.)

■ Where "earnings", "net income" or "profit" is used as the basis for the calculation of bonus compensation and the process for the ascertainment of such "earnings", "net income" or "profit" is also described in the plan adopted, and where it is clear and complete, the directions therein will govern. Where the plan or contract is ambiguous or incomplete, construction according to the general rules of construction of contract, becomes necessary. The Court will in such latter case attempt to ascertain the intention of the parties which intention is to be determined from the plan or contract interpreted in the light of surrounding circumstances, that is, those surrounding the adoption of the plan or the making of the contract; previous interpretation by the parties thereto; and the ends sought to be subserved by the plan or contract. See Bigbee & Warrior River Packet Co. v. Moore, 121 Ala. 379, 25 So. 602; Navco Hardwood Co. v. Becks, 222 Ala. 631, 134 So. 4; Harvey v. Missouri Valley Elec. Co., Mo., 268 S.W. 2d 820, 49 A.L.R.2d 1124; 13 Am.Jur., Corps., § 1037 (Pocket Part); 73 C.J.S. Profit p. 1; "Computation of Net Profits in Contingent Compensation Arrangements", 51 Col.L.Rev. 867.

Guided by the foregoing principles we conclude that upon the facts averred "earnings", "net income" and "profit" as used in the Retirement and Bonus or Incentive Plans herein cannot be construed to include or anticipate profits from the sale of a capital asset. Heller v. Boylan, supra; Associated Elec. Co. v. United States, 97 F. Supp. 821, 119 Ct.Cl. 675; Arey v. George Associates, Inc., 299 Mass. 130, 12 N.E.2d 84, 86; 28 C.J.S. Earnings p. 611; 49 A. L.R.2d 1131; 51 Col.L.Rev. 867.

■ It is established that the court has the power to hold the recipient officers liable for the amounts erroneously received as a result of miscomputation where such interested officers supervise the computing of the amounts payable by the corporation to an incentive fund, the amount of the bonuses to be paid thereunder, and participate in the amount distributed thereby. Winkelman v. General Motors Corp., supra; 44 F.Supp. 960; 39 F.Supp. 826; 48 F.Supp. 485; Alexander v. Anderson, Sup., 48 N. Y.S.2d 102; Heller v. Boylan, supra; Mann v. Luke, Sup., 44 N.Y.S.2d 202; 5 Fletcher Cyc. of Corp. § 2143; see also Gallin v. National City Bank of New York, supra.

■ Upon the principles and authorities in support thereof addressed to the foregoing discussion of "Ratification", we conclude that on the allegations made, the action of the stockholders and the board of directors in refusing to seek recovery of these amounts does not preclude complainant, minority stockholder, from testing in equity the right of recovery on behalf of the corporation, on this aspect. See Winkelman v. General Motors Corp., supra; Heller v. Boylan, supra.

### Laches.

■ The defense of laches is not, against the bill as a whole, well taken. Where, as here, "the wrongful acts complained of in the bill extended through a series of years down to within a short time of the filing of the bill; and even though, as to some of the acts complained of, having occurred more than six years prior to the commencement of the suit, and therefore barred by the statute, still this would not defeat the complainants in having an accounting on all matters not within the bar of the statute". Montgomery Light Co. v. Lahey, 121 Ala. 131, 25 So. 1006, 1009; 19 C.J.S. Corporations § 829. This case is not governed by Blythe v. Enslen, 203 Ala. 692, 85 So. 1, where the directors, charged with negligence, could avail them-

selves of the one year Statute of Limitations. Here, complainant charges the officer-directors with conversion of corporate funds to their benefit.

From the foregoing it results as our view that the learned trial court was in error in sustaining the demurrer to the bill as amended.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.