Robert A. BLACK, Appellant,

v.

The BOATMEN'S NATIONAL BANK OF ST. LOUIS, a corporation, as Co-Trustee Under Trusts of: Oscar E. Niedringhaus, Dated January 8, 1936, et al., Respondents.

No. 36820.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Aug. 17, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

Application to Transfer Denied
Nov. 8, 1976.

William A. Ens and Don O. Russell, St. Louis, for appellant.

Donald U. Beimdiek, Larry B. Luber, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, for respondents.

ALDEN A. STOCKARD, Special Judge.

Plaintiff, Robert A. Black, has appealed from an adverse judgment in this court-tried case wherein he sought to recover $70,422.84 alleged to be due him as a bonus provided for by his employment contract.

At the 1964 annual meeting of the Board of Directors of Niedringhaus Metal Products Company (hereinafter referred to as the "Corporation") plaintiff, who then was a member of that board, was elected vice president and chief executive officer, and his salary as such was fixed at $18,000.00 per year. At the same meeting the following resolution was adopted:

"BE IT RESOLVED, that an Executive bonus plan for Robert A. Black be and the same is hereby adopted as follows: In addition to the base salary Mr. Black is receiving, he is to receive as a bonus 25% of the first $20,000.00 per year of net profits, plus 10% per year of the net profits over $20,000.00; both percentages to be applied on the net profit figure before Federal and State tax. The plan shall be effective for the year 1964 and thereafter during Mr. Black's continued employment, or until modified by this Board."

In early 1967 the stockholders and directors voted to cease operations, and on February 13, 1967, the Corporation discontinued all manufacturing operations. The inventories and fixed assets were sold, resulting in a "gain" of $398,651.51. The pension trust for employees was liquidated and "excess funds" in the amount of $286,-533.89 were transferred to the Corporation. Plaintiff contends that these two items should be included in determining "net profits" for the year 1967. If this is done the bonus to which he is entitled is $70,-422.84. Without the two funds being so considered, the Corporation operated at a loss for the year 1967, and no bonus would be due.

After making findings of fact and conclusions of law, the trial court held that the two amounts above referred to were not to be included in arriving at "net profits" for 1967.

Appellant asserts (a) that the trial court erred in ruling "the contract * * * was ambiguous;" (b) that the term " 'Net profits' means what is left for the stockholders after paying current expenses, interest on debt and everything else which the stockholders, as a body corporate, are liable to pay;" and (c) if the contract is held to be ambiguous all aids to construction require a finding in his favor.

■ Because the parties are in disagreement as to the meaning of the contract

does not necessarily result in it being ambiguous. *Mickelberry's Food Products Co. v. Haeussermann*, 247 S.W.2d 731 (Mo.1952). But, in construing this corporate resolution, as in construing any other agreement, we must attempt to ascertain the intention of the parties. *Harvey v. Missouri Valley Electric Co.*, 268 S.W.2d 820 (Mo.1954). In doing so we first look to the words used in the agreement. In this case we find little help there. The resolution only states that plaintiff's bonus is to be a certain percentage of the "net profits" before Federal and State tax.

In *Siteman v. Marine Petroleum Co.*, 511 S.W.2d 436, 439 (Mo.App.1974) this Court pointed out that "profit" is an "elastic and ambiguous" word, and it was then held: "We interpret the meaning of 'net profits' in accord with the contracting parties' intention as to reach an interpretation that is fair and reasonable considering 'the relationship of the parties, the subject matter of the contract, the usages of the business, the surrounding facts and circumstances attending the execution of the contract and its interpretation by the parties.'" See also *Harvey v. Missouri Valley Electric Co.*, supra.

■ Plaintiff argues citing *Warren v. King*, 108 U.S. 389, 2 S.Ct. 789, 27 L.Ed. 769 (1883), that "net profits" means what is left after paying certain expenses. But, he does not indicate from what these payments are to be deducted. That is the question in this case, and since the language of the resolution does not aid us the meaning of the resolution is ambiguous. We must attempt to determine what was intended by the parties, and to do this we necessarily must look to the purpose of the agreement and the circumstances in which the term "net profits" was used. *Smith v. Peninsula House, Inc.*, 65 N.J.Super. 341, 167 A.2d 807 (1961); *Smith v. Dunlap*, 269 Ala. 97, 111 So.2d 1 (1959). See also the annotation at 49 A.L.R.2d 1129 entitled "construction of 'net profits,' 'earnings,' or the like, in provision for profit-sharing bonus for corporate officers or employees."

The Corporation was engaged in the manufacture of steel barrels and steel doors. Prior to 1964 Lambert Niedringhaus was its president and chief executive officer. That year he decided to move to the State of Montana, and plaintiff was asked to "take over the running of the company." The Corporation had been operating at a loss for several years. It was at the 1964 annual meeting that plaintiff was named the "chief executive officer" and his compensation fixed at $18,000 a year plus a bonus to be paid from "net profits" before Federal and State taxes. This clearly was an incentive bonus to encourage a profit-producing management. There was no discussion between plaintiff and Mr. Niedringhaus or anyone else as to the way gains from the sale of assets should be treated. It is clear that liquidation of the Corporation was not then being considered, and therefore the resolution authorizing plaintiff's employment and establishing an incentive bonus did not come about because of a contemplated liquidation of the Corporation. The bonus was intended to be compensation for profitable corporate management; not for liquidation of the Corporation.

■ When we consider the resolution as creating a profit incentive bonus, as we do, we should examine the source of the two funds from which plaintiff seeks to charge with the bonus. There is no indication or claim that the assets and inventories sold during liquidation and resulting in a "gain," or that the "excess funds" received from the liquidation of the pension trust were created by or came into existence because of any managerial activity of plaintiff. The situation we have here is totally unlike that in *Siteman v. Marine Petroleum Co.*, supra. There, in the course of the normal and usual operations of a going company, and presumably as a result of good management, a physical asset in the form of a terminal was sold at a substantial capital gain, and the proceeds used to further the "integral parts of Marine's wholesale fuel business." That activity was an essential and normal part of the operations of the company, and the person to receive a bonus

based on net profits was employed as general manager to supervise those operations. It was clear that the bonus plan was intended by the parties to measure the compensation for those profitable operations. But, in this case plaintiff's management had nothing to do with the creation of the two funds from which he seeks a bonus, and his claim cannot be supported on the basis that his managerial ability, which was the motivating reason for the bonus, brought about or added to these two funds.

We conclude that it was not the intention of the parties at the time of the adoption of the resolution that the bonus there authorized should be based on funds received by the Corporation as the result of its liquidation. In view of this conclusion, we need not discuss other contentions presented by respondents on this appeal.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.