[No. 53988–0.   En Banc.   December 15, 1988.]

THE STATE OF WASHINGTON, *Petitioner,* v. J–R DISTRIBU-
TORS, INC., ET AL, *Respondents.*

*Norm Maleng, Prosecuting Attorney,* and *Michael M. Danko* and *Donna L. Wise, Deputies,* for petitioner.

*Victor V. Hoff,* for respondents.

CALLOW, J.—The State challenges the King County Superior Court order granting J–R Distributors' (J–R) motion for return of property. The State contends both that the Superior Court did not have jurisdiction to enter the order and that J–R's motion should not have been

granted on the merits. The issues presented by the State are:

1. Whether the Superior Court had jurisdiction over the alleged pornographic material which was the subject matter of a criminal case, when the case has been appealed to an appellate court.

2. Whether there are constitutional requirements mandating a different standard of probable cause for affidavits supporting requests for the issuance of a search warrant for pornographic material.

3. Whether there are constitutional requirements mandating a judicial hearing prior to the seizure of alleged pornographic material rather than a review of affidavits by a magistrate.

We affirm the Superior Court's issuance of an order requiring the return of material seized beyond that properly held for evidence and remand for determination as to whether those items seized for evidentiary purposes may be used in the criminal action against J–R Distributors.

I

PROCEDURAL AND FACTUAL RECITATION

On October 9, 1986, a Seattle District Court Judge issued a warrant authorizing the search of J–R's retail outlet and warehouse. The warrant was issued pursuant to an affidavit filed by a detective of the Seattle Police Department. The affidavit stated that the detective believed that evidence of the crime of promoting pornography could be found at these locations. The affidavit also stated that the detective had inspected J–R's retail store and discovered a large number of "bondage" type magazines. *See State v. Reece*, 110 Wn.2d 766, 757 P.2d 947 (1988) (consolidated with *State v. J–R Distribs., Inc.*). The detective purchased several of these magazines and briefly described their contents in the affidavit. The affidavit then listed 17 magazines sought to be seized and included a brief description of each magazine. Finally, the affidavit stated that the detective believed that additional pornographic material could be

found at J–R's retail store and warehouse. The warrant was executed the same day.

Later that day the District Court Judge issued a second search warrant for the store, based on an affidavit from a second detective. This detective stated that while serving the first warrant he observed additional items that would support a charge of promoting pornography. The second warrant included a list of 18 magazines and a brief description of each. The District Court Judge then issued a second search warrant for the warehouse, based on the first detective's affidavit stating that he observed additional items there that would support a charge of promoting pornography. This affidavit listed 83 different magazines and 16 videotapes. Pursuant to these warrants, the police seized approximately 1,182 copies of 103 magazines and 16 videotapes.

On October 13, 1986, J–R filed a motion for return of property in Seattle District Court. Before that motion was heard, an information was filed in superior court charging J–R with 38 counts of promoting pornography and 55 counts of attempting to promote pornography, in violation of RCW 9.68.140.[1] On February 4, 1987, the Superior Court dismissed the information based on its conclusion that

---

[1]RCW 9.68.140 provides that:

"A person who, for profit–making purposes and with knowledge, sells, exhibits, displays, or produces any lewd matter as defined in RCW 7.48A.010 is guilty of promoting pornography."

RCW 7.48A.010(2) provides that:

"'Lewd matter' is synonymous with 'obscene matter' and means any matter:

"(a) Which the average person, applying contemporary community standards, would find, when considered as a whole, appeals to the prurient interest; and

"(b) Which explicitly depicts or describes patently offensive representations or descriptions of:

"(i) Ultimate sexual acts, normal or perverted, actual or simulated; or

"(ii) Masturbation, fellatio, cunnilingus, bestiality, excretory functions, or lewd exhibition of the genitals or genital area; or

"(iii) Violent or destructive sexual acts, including but not limited to human or animal mutilation, dismemberment, rape or torture; and

"(c) Which, when considered as a whole, and in the context in which it is used, lacks serious literary, artistic, political, or scientific value."

RCW 9.68.140 was unconstitutional. The State sought review of the dismissal in this court, pursuant to RAP 2.3(d) and RAP 4.2(a)(4). We accepted review, reversed the Superior Court and remanded the cause of *State v. J–R Distribs., Inc., supra,* for trial. The issue before us in this appeal was not before the court in *State v. Reece, supra,* and *State v. J–R Distribs., Inc., supra. State v. Reece, supra,* was concerned with the constitutionality of RCW 7.48A.010 and RCW 9.68.140 and held that these statutes did not violate the federal or state guaranties of freedom of speech. U.S. Const. amend. 1; Const. art. 1, § 5.

The State failed to return the seized materials to J–R following the dismissal of the information. J–R then noted its motion for return of property for hearing in Seattle District Court. On March 5, 1987, the District Court Judge denied the motion. J–R appealed this denial to the King County Superior Court on March 11, 1987. On May 21, 1987, the Superior Court entered an order requiring that the property be returned. We stayed the order, pending our determination as to whether the Superior Court had the authority to order the return of the seized materials.

## II
### PROPER COURT FOR HEARING MOTION FOR RETURN OF PROPERTY

The State contends that the Superior Court did not have jurisdiction to decide whether J–R's motion for return of illegally seized property had been improperly denied by the Seattle District Court. The State asserts that the Superior Court could not rule on the motion without first obtaining permission from the Supreme Court, because review had already been accepted by this court, pursuant to RAP 7.2.

RAP 7.2 delineates the authority of the trial court after review has been accepted by an appellate court. RAP 7.2(a) states that: "[a]fter review is accepted by the appellate court, the trial court has authority to act in a case only to the extent provided in this rule . . ." RAP 7.2(e) grants the trial court authority to hear and determine postjudgment

motions and actions to modify decisions in certain circumstances. However, "[i]f the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the entry of the trial court decision." RAP 7.2(e).

Formerly, Washington practice required a party to first file a motion in the appellate court requesting permission to file a postjudgment motion in the superior court. *Doss v. Schuller*, 47 Wn.2d 520, 522, 288 P.2d 475 (1955). Now, under RAP 7.2, the motion is made initially in the trial court, and goes before the appellate court only if the lower court grants the motion. *See* RAP 7.2(e). The Comment to RAP 7.2(e) states:

> Under these rules, the motion is heard first in the court best equipped to evaluate the grounds for a post–trial motion. Unnecessary work for the appellate court is eliminated.

Comment, RAP 7.2(e), 86 Wn.2d 1173 (1976). Thus, the procedure set forth in RAP 7.2(e) was intended to grant more authority to the trial court with regard to postjudgment motions.

In order to determine whether the Superior Court complied with the requirements set forth in RAP 7.2, we must determine whether its ruling on J–R's motion was a determination that affected a decision being reviewed by this court. *See* RAP 7.2(e).

J–R initially filed a motion for return of illegally seized property in Seattle District Court. Its motion was governed by JCrR 2.10(e), which has since been replaced by CrRLJ 2.3(e). JCrR 2.10(e) provided:

> **(e) Motion for Return of Property.** A person aggrieved by an unlawful search and seizure may move the court for the return of the property on the ground that the property was illegally seized and that he is lawfully entitled to possession thereof. If the motion is granted, the property shall be returned. If a motion for return of property is made or comes on for hearing after an indictment or information is filed in the court in

which the motion is pending, it shall be treated as a motion to suppress.

J–R argues that this rule does not govern its motion since the rule refers to a motion for return made in the same court in which the information has been filed. Here the motion was filed in district court, and the information in superior court. J–R asserts that therefore the motion for return of property was not transformed into a motion to suppress, and the Superior Court properly exercised its appellate jurisdiction in reversing the District Court's denial of the motion.

█ This interpretation is supported by the technical language of JCrR 2.10(e). However, it is not in accord with the intent behind the rule. If criminal charges are pending in any court, a determination that the evidence forming the basis for those charges was illegally seized is tantamount to a suppression order. Thus, the basis for changing a motion for return into a motion to suppress lies in the fact that criminal charges have been filed. It is not material that the charges may have been filed in superior court while the motion was made in district court. The rule does not contemplate district court judges ruling on return motions when criminal charges are pending in superior court.

JCrR 2.10(e) has been amended to provide for such situations. CrRLJ 2.3(e)(1) now states:

(1) *Procedure if Charges Pending.* If a motion based on the ground that property was illegally seized is made or comes on for hearing after a complaint or citation and notice is filed in the court in which the motion is pending, it shall be treated as a motion to suppress. If charges are pending in another court at the time a motion made upon any ground is filed or comes on for hearing, the motion shall be transferred to the other court and subject to its rules of procedure.

Had this rule been in effect at the time J–R filed its motion for return of property, the motion would have been transferred to superior court, where the information was filed, and would have become a motion to suppress.

In sum, even though the precise language of JCrR 2.10(e) suggests that J–R's motion need not be treated as a motion to suppress, the intent behind the rule and the practical effect of the order granting J–R's motion show that the motion should be treated as such.

If J–R's motion for return of property is treated as a motion to suppress, we must inquire as to the impact the Superior Court's decision to grant the motion had on the criminal case recently decided by this court. If the State's entire case had been based on evidence seized from J–R's store and warehouse, the order requiring return of those materials would have effectively precluded the State from bringing its case. In that situation the Superior Court's order would have changed "a decision then being reviewed by the appellate court", and permission from this court would have been necessary before the Superior Court could take action.

However, counts 1 through 10 in the information filed against J–R relate to the sale or display of magazines between July 1, 1986, and October 8, 1986. These counts were not based on the material seized during the October 9, 1986, search. J–R's motion sought return only of the materials it claims were illegally seized on October 9. Thus, the State's case with regard to the first 10 counts of the information is unaffected by J–R's motion for return of property. To this extent, the Superior Court's order requiring return did not affect the decision regarding the constitutionality of RCW 9.68.140. The State's case against J–R was not based entirely on evidence ordered returned by the Superior Court and, therefore, the Superior Court was not required to obtain permission from this court before ordering the State to return the seized property to J–R. Upon remand the Superior Court should reconsider the motion to return property, which pertains to the counts based upon the material seized October 9, 1986, under the principles we enunciate herein.

## III

### SCOPE AND CONTENT OF PROBABLE CAUSE AFFIDAVITS FOR THE SEIZURE OF ALLEGED PORNOGRAPHIC MATERIAL

J–R contends that the search warrants failed to describe the materials to be seized with sufficient specificity to allow the District Court Judge to determine whether there was probable cause to believe that the materials described in the affidavit were obscene. The first affidavit was 11 pages long and also included 9 pages of pictures from magazines purchased by the first detective. This detective began by stating that he observed that J–R was selling "bondage" magazines at its retail outlet. He then obtained a copy of J–R's business license, where he discovered that J–R had previously been convicted for selling obscene material. He described the contents of several magazines he purchased from the retail store, including the title and a 1–sentence description. He then described his observations of the warehouse. The remainder of the affidavit consisted of a list of 17 magazines sought to be seized, including the title of each magazine and a 2– to 3–sentence description of the contents.[2]

The second and third warrant affidavits were not as detailed as the original affidavit. However, they also included the titles of each of the magazines or videos to be seized and brief descriptions of the contents.[3]

---

[2] The first detective described some of the magazines as follows:

"'Slave Roster, Vol No 1'—Pictures of women with exposed breasts and/or genitalia tied or restrained by ropes and other restraints. One page has two photographs depicting clothespins on nipples, the one photograph showing the woman pictured with an expression of pain. The copy accompanying the photograph discusses 'Bondage and Discipline' and the 'control of behavior' . . .

"'Bondage Life'—Pictures of women bound and gagged. The women are generally clothed. Some pictures reveal some parts of breasts. On page 58, 'Bondage Workshop' presents the 'fleur de lis', a strap which is described and depicted in a diagram, as well as in four photos. Much of the magazine has letters from bondage types showing ideas and soliciting certain bondage material."

[3] The second detective described some of the magazines as follows:

In *New York v. P.J. Video, Inc.*, 475 U.S. 868, 89 L. Ed. 2d 871, 106 S. Ct. 1610 (1986), the United States Supreme Court discussed the proper standard for issuance of a warrant authorizing seizure of materials presumptively protected by the First Amendment. In affirming the dismissal of informations charging the defendants with obscenity, the New York Court of Appeals had held that "'there is a higher standard for evaluation of a warrant application seeking to seize such things as books and films, as distinguished from one seeking to seize weapons or drugs, for example.'" *P.J. Video,* at 871 (quoting *People v. P.J. Video, Inc.,* 65 N.Y.2d 566, 569–70, 483 N.E.2d 1120, 1123 (1985)). The Supreme Court reversed, holding that:

> [A]n application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally.

*P.J. Video,* at 875.

The Court in *P.J. Video* recognized that the seizure of films or books on the basis of their content raises First Amendment issues not raised by other types of seizures. *P.J. Video,* at 873. Thus, special requirements have been imposed in these cases. For example, allegedly obscene items may not be seized without a warrant under the "exigency exception" to the Fourth Amendment. *P.J. Video,* at 873 (citing *Roaden v. Kentucky,* 413 U.S. 496, 37 L. Ed. 2d 757, 93 S. Ct. 2796 (1973)). Furthermore, large–scale seizures of books or films constituting a "prior restraint" must be preceded by an adversary hearing on the question of obscenity. *P.J. Video,* at 873 (citing *A Quantity of Copies of Books v. Kansas,* 378 U.S. 205, 12 L. Ed. 2d 809, 84 S.

---

"1. Spank—Vol 2, Num 3, Women Being Spanked with Rulers and Hairbrushes and Belts

"2. Slap Shots—Vol 1, Num 4, Women being Spanked with Hairbrushes, Canes, Ping Pong Paddles . . .

"9. Obeisance—Vol 2, Num 4, Bondage, Torture, Whippings"

Ct. 1723 (1964); *Marcus v. Search Warrant,* 367 U.S. 717, 6 L. Ed. 2d 1127, 81 S. Ct. 1708 (1961)).

A warrant authorizing seizure of materials presumptively protected by the First Amendment must be supported by affidavits "setting forth specific facts in order that the issuing magistrate may 'focus searchingly on the question of obscenity.'" *P.J. Video,* at 873–74 (quoting *Marcus,* at 732); furthermore, "the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain." *Stanford v. Texas,* 379 U.S. 476, 485, 13 L. Ed. 2d 431, 85 S. Ct. 506 (1965), *cited in P.J. Video,* at 871. However, the Court concluded that:

> [A] reasonably specific affidavit describing the content of a film [or books] generally provides an adequate basis for the magistrate to determine whether there is probable cause to believe that the film [or books are] obscene, and whether a warrant authorizing the seizure . . . should issue.

*P.J. Video,* at 874 n.5.

██ *P.J. Video* determined that a search warrant for allegedly obscene materials should be evaluated under the same standard of probable cause used to review other types of search warrants. This court has held that "[p]robable cause is established in an affidavit supporting a search warrant by setting forth facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity." *State v. Huft,* 106 Wn.2d 206, 209, 720 P.2d 838 (1986) (citing *State v. Cord,* 103 Wn.2d 361, 365, 693 P.2d 81 (1985)). In addition, the issuing judge's determination that probable cause exists will be accorded considerable deference by appellate courts, with doubts as to the existence of probable cause resolved in favor of the warrant. *State v. Mak,* 105 Wn.2d 692, 714, 718 P.2d 407, *cert. denied,* 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986).

The warrant affidavits before us specifically described, albeit briefly, the contents of each of the magazines or videos to be seized. These factual descriptions were sufficient to allow the District Court Judge to conclude that the magazines and videos contained probably obscene material as defined in RCW 7.48A.010(2). The affidavits included facts adequate to allow a "reasonable person to conclude the defendant probably is involved in criminal activity".

## IV
### SEIZURE FOR EVIDENTIARY PURPOSES OR PRIOR RESTRAINT?

Finally, J–R contends that the seizure of magazines and videos from its premises constituted an unlawful prior restraint. In *Near v. Minnesota,* 283 U.S. 697, 713, 75 L. Ed. 1357, 51 S. Ct. 625 (1931), the United States Supreme Court recognized that the primary purpose of the guaranty of freedom of the press in the First Amendment was to prevent prior restraints on publication. Blackstone stated that:

"The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no *previous* restraints upon publications, and not in freedom from censure for criminal matter when published."

4 W. Blackstone, *Commentaries* *151, *152, *quoted in Near,* at 713. Thus, any system of prior restraints of expression comes into court bearing a heavy presumption against its constitutional validity. *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 9 L. Ed. 2d 584, 83 S. Ct. 631 (1963); *Fine Arts Guild, Inc. v. Seattle,* 74 Wn.2d 503, 506, 445 P.2d 602 (1968). The Court added in *Bantam,* "We have tolerated such a system only where it operated under judicial superintendence and assured an almost immediate judicial determination of the validity of the restraint." *Bantam,* at 70.

Despite judicial distaste for prior restraints, such restraints have been upheld in certain circumstances. In *Near,* the Court recognized that the protection against

prior restraints is not unlimited. *Near,* at 716. We have noted that exceptions to this protection might occur during wartime, to regulate fighting words, and to regulate obscenity. *Near,* at 716. This court has also recognized that obscenity is not protected by the bar against prior restraints. *See State v. Coe,* 101 Wn.2d 364, 373, 679 P.2d 353 (1984); *Fine Arts Guild,* at 507.

The term "prior restraint" has been used to describe "any form of government action which tends to suppress or interfere with speech activity before it is ultimately punished through civil or criminal sanctions in a court of law." Arenson, *Prior Restraint: A Rational Doctrine or an Elusive Compendium of Hackneyed Cliches?,* 36 Drake L. Rev. 265, 266 (1986–1987). Prior restraints may occur in two ways. First, a prior restraint occurs when "'official restrictions [are] imposed upon speech or other forms of expression in advance of actual publication.'" *Coe,* at 372 (quoting *Seattle v. Bittner,* 81 Wn.2d 747, 756, 505 P.2d 126 (1973)). A prior restraint also occurs when expression is foreclosed prior to "an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 390, 37 L. Ed. 2d 669, 93 S. Ct. 2553 (1973).

In *Marcus v. Search Warrant, supra,* the police seized approximately 11,000 copies of 280 allegedly obscene publications. In holding the seizure unconstitutional, the Supreme Court recognized that the mass seizure involved constituted an effective prior restraint. The Court stated:

> But there is no doubt that an effective restraint—indeed the most effective restraint possible—was imposed prior to hearing on the circulation of the publications in this case, because all copies on which the police could lay their hands were physically removed from the newsstands and from the premises of the wholesale distributor . . . Their ability to circulate their publications was left to the chance of securing other copies, themselves subject to mass seizure under other such warrants. The public's opportunity to obtain the publications was thus determined by the distributor's readiness and ability to outwit

the police by obtaining and selling other copies before they in turn could be seized.

*Marcus,* at 736.

In *A Quantity of Copies of Books v. Kansas, supra* at 210, a similar large–scale seizure of allegedly obscene materials took place. The Court stated that "[a] seizure of all copies of the named titles is indeed more repressive than an injunction preventing further sale of the books."

█ This case presents the same type of large–scale seizure as that occurring in *Marcus* and *A Quantity of Copies of Books.* The police apparently seized all available copies of the magazines and videos named in the warrant, seizing 1,182 copies of 103 magazines and 16 videotapes. Thus, J–R was effectively restrained from disseminating these materials prior to an adequate determination that the magazines and videotapes were not protected by the First Amendment. *See Pittsburgh Press Co.,* at 390.

In *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 559, 43 L. Ed. 2d 448, 95 S. Ct. 1239 (1975) the United States Supreme Court articulated a 2–part test to determine whether, under any circumstances, a prior restraint may be upheld. First, the expression must fall into one of the narrowly defined exceptions to the prohibition against prior restraint. In addition, the action resulting in the prior restraint must comply with procedural safeguards designed to reduce the dangers of suppressing expression protected under the First Amendment.

In this case, the State effectively imposed a prior restraint on J–R's dissemination of allegedly obscene materials. Obscenity falls within one of the "narrowly defined exceptions" to the prohibition against prior restraints. *See Near,* at 716; *Coe,* at 373; *Fine Arts Guild,* at 507. If we assume the materials seized from J–R are obscene, a prior restraint on the distribution of those materials could be constitutional. However, the necessary procedural requirements must also be satisfied before the State's action can be upheld as a lawful prior restraint.

Initially, it is important to distinguish between a large–scale seizure of allegedly obscene materials and the seizure of a limited number of items for evidentiary purposes. *Marcus* concluded that a large–scale seizure of allegedly obscene materials cannot take place absent an opportunity for a prior adversary hearing to determine whether the material sought to be seized is obscene. *Marcus,* at 736. In *A Quantity of Copies of Books v. Kansas, supra,* the Court reaffirmed the necessity of a prior adversary hearing, concluding that:

> [I]f seizure of books precedes an adversary determination of their obscenity, there is danger of abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books.

*A Quantity of Copies of Books,* at 213; *see P.J. Video,* at 873. In *Heller v. New York,* 413 U.S. 483, 491, 37 L. Ed. 2d 745, 93 S. Ct. 2789 (1973), the Court stated that any large–scale seizure of materials presumptively protected by the First Amendment will be carefully scrutinized. Here no adversary hearing on the issue of obscenity took place prior to the seizure of magazines and videotapes from J–R. In fact, J–R did not have an opportunity to contest the obscenity of the seized materials until several months after the seizure occurred. Therefore, the mass seizure of J–R's materials without an opportunity for a prior adversary hearing on the issue of obscenity constituted an invalid prior restraint.

▮ On the other hand, the seizure of a limited number of allegedly obscene materials for evidentiary purposes may take place without a prior adversary hearing on the issue of obscenity. In *Heller v. New York, supra,* the issue before the Court was:

> whether a judicial officer authorized to issue warrants, who has viewed a film and finds it to be obscene, can issue a constitutionally valid warrant for the film's seizure as evidence in a prosecution against the exhibitor, without first conducting an adversary hearing on the issue of probable obscenity.

*Heller,* at 484. The Court concluded that:

If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible.

(Footnote omitted.) *Heller,* at 492. The Court emphasized in *Heller* that a single copy of the film "was temporarily detained in order to *preserve it as evidence*", and added that there had been no showing that the seizure of the film precluded its continued exhibition. *Heller,* at 490. However, if the defendant can show that the seizure precluded continued exhibition of the film, the trial court should allow the film to be copied so that it can continue to be shown pending a determination on the issue of obscenity. *Heller,* at 492–93. Otherwise, the film must be returned to the owner. *Heller,* at 493.

Although the State may seize allegedly obscene materials for evidentiary purposes, this seizure must comply with the necessary procedural safeguards to ensure that First Amendment freedoms are not infringed upon. First, the seizure of allegedly obscene materials must occur pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate. *Heller,* at 492. In addition, a prompt judicial determination on the issue of obscenity in an adversary proceeding must be available at the request of any interested party. *Heller,* at 492. Such request may be made by means of a motion for return of property. *United States v. Sherwin,* 539 F.2d 1, 9 (9th Cir. 1976).

J–R filed a motion for return of property in Seattle District Court on October 13, 1986, 4 days after the seizure occurred. This motion had not been heard by the time an information was filed in superior court nearly a month later. This delay does not comport with the requirement of a prompt adversary proceeding. *Freedman v. Maryland,* 380 U.S. 51, 13 L. Ed. 2d 649, 85 S. Ct. 734 (1965) held that "[a]ny restraint imposed in advance of a final judicial

determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution." *Freedman*, at 59. Other states have made provisions for judicial hearings in similar situations to occur within a matter of days of the seizure of allegedly obscene material. *See Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 1 L. Ed. 2d 1469, 77 S. Ct. 1325 (1957) (trial within 1 day after seizure and decision within 2 days of conclusion of trial); *Marcus v. Search Warrant, supra* (hearing not less than 5 nor more than 20 days after seizure); *State v. Bumanglag*, 63 Hawaii 596, 634 P.2d 80 (1981) (hearing within 7 days of filing of motion for hearing and decision within 10 days thereafter).

It is unclear from the record in the matter whether J–R was unable to obtain a prompt adversary hearing on the issue of obscenity, through no fault of its own. If such was the case, we conclude that the State's seizure of magazines and videos for evidentiary purposes constituted an invalid prior restraint. As noted previously, court rules provide that when a motion for return of property is heard after an indictment or information is filed, it shall be treated as a motion to suppress. JCrR 2.10(e). It follows that the materials seized in quantity from J–R may not be used in the State's criminal proceeding for violation of RCW 9.68.140, and these materials should be returned to J–R as ordered by the trial court.

## V
### CONCLUSION

The State has effectively restrained J–R from distributing approximately 1,182 copies of 103 magazines and 16 videotapes that have yet to be adjudged obscene. The period of this restraint is approaching its second year. Such a restraint cannot be allowed to occur without procedural safeguards to ensure that expression protected by the First Amendment is not foreclosed. These safeguards include either (a) the issuance of a search warrant based upon probable cause before alleged pornographic materials are

seized for evidentiary purposes or (b) a prior adversary hearing on the issue of obscenity before a large–scale seizure of allegedly obscene materials may take place. A seizure of even a limited number of such materials for evidentiary purposes may take place only when the seizure is preceded by issuance of a search warrant and followed by a prompt adversary hearing on the issue of obscenity. In this case, the State failed to provide an adversary hearing prior to its large–scale seizure of magazines and videotapes from J–R. Those items not needed for evidentiary purposes must be returned to J–R. It is not clear whether the lack of a prompt adversary hearing following the seizure of items for evidentiary purposes was the fault of J–R or the State. If the State resisted a timely adversary hearing on the issue of obscenity, the material seized from J–R for evidentiary purposes cannot be used in a criminal action and must be returned. The trial court hearing the case on remand must reconsider the motion for return of property as to each count of the information in light of the principles herein enunciated.

PEARSON, C.J., UTTER, BRACHTENBACH, and DOLLIVER, JJ., and HAMILTON, J. Pro Tem., concur.

DURHAM, J. (concurring in part, dissenting in part)—The majority holds, *inter alia,* that a trial court has jurisdiction to release evidence upon which a criminal case is based while an appellate court is reviewing an unrelated question of law, without first obtaining the permission of that appellate court. I must dissent from this position.

RAP 7.2 controls the extent of a trial court's jurisdiction in a case pending review in an appellate court. Under that rule, the trial court has authority to adjudicate postjudgment motions authorized by the criminal rules or statutes, but "[i]f the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the entry of the trial court decision." RAP 7.2(e). The majority

concludes that the Superior Court's decision to return the allegedly pornographic materials seized by the State did not change a decision under review in this court, and that consequently the trial court had authority to return the property.

A brief review of the procedural history of this case is warranted. J–R Distributors was charged with 93 counts of promoting, or attempting to promote, pornography in violation of RCW 9.68.140. On February 4, 1987, the Superior Court held that this statute was unconstitutionally vague and dismissed all 93 counts. We accepted review and reversed the trial court ruling on June 23, 1988. However, in the interim, J–R brought a motion in the Seattle District Court to return the allegedly pornographic materials that had been seized by the State. The motion was denied, and J–R appealed to the King County Superior Court. Without seeking prior permission from this court, the Superior Court determined that the seizure was illegal and entered an order returning this property. The State obtained a stay of the order and appealed to this court.

The majority focuses on the fact that although the seized material was relevant to 83 of the 93 counts, the other 10 counts were "unaffected" by the motion to return property. Because 10 counts were not dependent on the seized evidence,[4] the majority concludes that the motion to return property did not change the decision being reviewed in this court. Therefore, under RAP 7.2(e) the trial court did not need appellate permission before returning the property. Majority, at 771. The majority also hypothesizes that "[i]f the State's entire case had been based· on evidence seized from J–R's store and warehouse", then the Superior Court's order would have changed the decision under review in this

---

[4]Eighty–three counts in the information were based on evidence acquired in the October 9, 1986 seizure that the trial court ruled was illegal. The other 10 counts related to magazines that were allegedly sold or displayed between July 1 and October 8, 1986, the seizure of which apparently has not been challenged. Majority, at 771.

court because the order would have "effectively precluded the State from bringing its case." Majority, at 771.

With this analysis, the majority arbitrarily establishes a rule that when 11 percent of the counts in an information survive, the case as a whole is unaffected. The ramifications of such a holding are mind boggling. Where is the line to be drawn? When all but one count remains? This cannot be. A decision is changed if any single count of the case under review is changed, regardless of the number that remain unaffected.

I acknowledge that the language of RAP 7.2 is confusing by its use of the phrase "[i]f the trial court determination will change a decision then being reviewed by the appellate court". The decision that was originally being reviewed here was the constitutionality of RCW 9.68.140, an issue technically unrelated to the legality of the search of the warehouse. Nonetheless, to allow a trial court to effectively dismiss the majority of the State's case while this court is determining the correctness of another issue flies in the face of reason. Thus, I would hold that the release of the evidence which supported 83 of the counts charged would "change" the case and that approval of this court should have been obtained.

As to the other issues resolved in the majority opinion, I concur fully.

DORE and ANDERSEN, JJ., concur with DURHAM, J.

Reconsideration denied April 7, 1989.