**FILED**
**MARCH 8, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOHANNA GRIDER, a single woman, | ) | |
| | ) | No. 37836-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER QUINN, a married man; | ) | UNPUBLISHED OPINION |
| CHRISTIAN PANG, a single man; | ) | |
| ALKALOID INC., a Washington corporation, | ) | |
| LUCID NORTH SPOKANE, LLC, a | ) | |
| Washington Limited liability company | ) | |
| | ) | |
| Respondents | ) | |

FEARING, J. — After the superior court issued a ruling and signed findings of fact

and conclusions of law, but not a judgment or decree, partners transferred partnership

funds to their appellate lawyer contrary to the superior court's ruling. The injured partner

did not discover the misappropriation of funds until after the superior court entered a

judgment and after the wronging partners appealed the superior court's judgment. When

the injured partner asked the superior court for an order compelling return of the funds to

the partnership, the court recognized the breach of fiduciary duty, but ruled that it lacked

authority to correct the wrong. We disagree and reverse.

FACTS

This appeal is a companion to JoHanna Grider v. Christopher Quinn, et. al., Case

No. 37433-5-III and arises from the same Spokane County Superior Court filing. We do

not repeat most of the facts written in the companion appeal's opinion. Appellant

JoHanna Grider challenges the superior court's denial of her motion to return $70,000 in

attorney fees paid to counsel for Christopher Quinn, Christian Pang, and Alkaloid, Inc.

We collectively refer to Quinn, Pang, and Alkaloid as "the defendants."

JoHanna Grider entered into a partnership agreement with Christopher Quinn and

Christian Pang to operate a North Spokane marijuana retail store. The agreement

included a promise to employ Grider as the general manager of the store at $7,500 per

month. Quinn and Pang later grew angry with Grider for her refusal to invade tax

reserves to purchase additional marijuana for sale. Quinn was also displeased that Grider

received a salary despite her herculean efforts to find a location for the store, renovate the

store from a log home to comply with Washington State Liquor and Control Board (LCB)

regulations, garner a personal loan for the renovations, and toil for long hours at the store.

Quinn and Pang successfully connived to oust Grider from her promised employment as

manager of the store and her interest in the partnership business.

JoHanna Grider filed suit against Christopher Quinn and Christian Pang and

Quinn's corporation, Alkaloid, Inc., which corporation the two gentlemen exploited in

their scheme. The complaint alleged nine causes of action. The first, third and sixth

causes of action pled alternative theories of recovery for the failure to repay the loans that

Grider procured to fund the renovation and opening of the partnership store. The second,

third, fourth, fifth, seventh and eighth causes of action pled alternative theories of

recovery for wrongful termination from Grider's salaried position and failure to pay

2

wages before termination. Her ninth cause of action asked for a receivership of the partnership business. In response, Quinn and Pang denied any partnership existed and contended that Alkaloid owned the state license to sell marijuana and operate the store.

After Christopher Quinn and Christian Pang banished JoHanna Grider from partnership affairs, the two refused Grider access to partnership financial records. Quinn and Pang also dallied, during discovery, to produce the records. On September 13, 2017, Thor Hoyte, counsel for Alkaloid and Christopher Quinn, wrote to his clients:

> Gents, still not afraid of this guy [JoHanna Grider's counsel]. As Jason [has] pointed out, he seems like the cranky old bastard kind of guy where [facts] don't seem to enter into the conversation. I suspect we will have to beat him[ ]back a couple of times.
> He also doesn't like very well not being immediately obeyed[.] That will work fine for us. I am not interested in given (sic) him rafts of [documents] and the like for him to sit back and pick through given us new [headaches] every week. We control the document flow.

Clerk's Papers (CP) at 1262, Grider v. Quinn, No. 37433-5-III (Wash. Ct. App.).

After exiled from the partnership business, JoHanna Grider developed concern that Christopher Quinn mismanaged the retail store. She particularly worried that Quinn failed to pay taxes and file tax returns and that he used partnership funds to pay personal expenses.

JoHanna Grider filed a motion for appointment of a receiver pending litigation. The superior court denied the motion based on Christopher Quinn's and Christian Pang's stipulation to maintain the status quo. The court entered a July 23, 2018 order that

prohibited Quinn and Pang from using the funds derived from the marijuana store for

personal expenses. The order declared in relevant part:

> 1. Pending trial, no payments shall be made from Alkaloid, Inc. other than those which are reasonable and necessary in the normal course of business, and
> 2. Pending trial, Alkaloid, Inc. shall pay no compensation or personal expenses, directly or indirectly, to any director or shareholder of the corporation or Christian Pang or any entity controlled or owned by them including, but not limited to Lucid Management LLC, and
> 3. Pending trial, Alkaloid, Inc. shall make no shareholder distributions no shareholder distributions pending trial.

CP (#37433-5-III) at 919. During the hearing on the entry of the order, the following

colloquy occurred between JoHanna Grider's counsel and the superior court:

> MR. BALTINS: Also, there should be a limit, Your Honor. There should be no payment of attorney fees to counsel for the shareholders.
> THE COURT: I'm not going to go that far. They can—I'm not going to hamstring their ability to pay their lawyers.

CP (#37433-5-III) at 3011. Defendants thereafter used more than $200,000 derived from

marijuana sales to pay their trial counsel, Thor Hoyte.

At the conclusion of a bench trial, the superior court ruled in favor of JoHanna

Grider on eight of her causes of action. As part of its ruling, the superior court declared

the relationship between Grider, Christopher Quinn, and Christian Pang to be a

partnership and further ruled that the LCB license to sell marijuana was an asset of the

partnership. The court also held that, because of transfers of partnership interests to third

parties by Quinn and Pang, Grider became the controlling partner in the business. The

court awarded Grider substantial damages. The superior court denied the ninth cause of

action, seeking a receivership, because the request was moot presumably because the court declared Grider to be the controlling partner of the business.

On August 22, 2019, the superior court signed findings of fact and conclusions of law, but no judgment. Conclusion of law 34 read:

> [T]he [c]ourt concludes that as of July 14, 2016, Ms. Grider with 33% became the controlling partner as opposed to Quinn with 25%.

CP (#37433-5-III) at 214.

The defendants objected to the findings of fact and conclusions of law signed by the superior court on August 22, 2018. Among other objections, the defendants complained about the superior court's ruling that Alkaloid, Inc. was property of the partnership.

On August 23, JoHanna Grider's counsel sent opposing trial counsel, Thor Hoyte, a missive reading: "Ms. Grider . . . will be reassuming management of the partnership business" and "no further payments shall be made . . . to defray [respondents'] legal fees." CP (#37433-5-III) at 2821. Defendants ignored the letter and refused to allow Grider access to the partnership store or access to financial records.

On October 1, 2019, attorney Ian Cairns entered an appearance in the lawsuit on behalf of Alkaloid, Inc. for purposes of appeal. No one sent Cairns a copy of JoHanna Grider's counsel's letter of August 23, 2019.

On November 18, 2019, the court sent a letter ruling directing JoHanna Grider's counsel to remove the language from the August 22 findings of fact and conclusions of

5

law that declared Alkaloid, Inc. to be an asset of the partnership. The superior court

maintained its ruling that the partnership owned the LCB license to sell marijuana.

JoHanna Grider tried diligently to timely enter a judgment in her favor. Grider

scheduled a hearing on the presentment three times: October 4, 2019, December 6, 2019,

and December 20, 2019. Finally, on February 6, 2020, Grider filed a motion to expedite

entry of judgment for February 18, 2020.

On February 17, 2020, the superior court signed its second amended findings of

fact and conclusions of law, which reaffirmed the ruling that the partnership owned the

marijuana retail license and that Grider was the controlling partner. The only significant

change between the August and February findings of fact and conclusions of law was the

removal of language that Alkaloid was an asset of the partnership. The findings of fact

also addressed an award of reasonable attorney fees in favor of JoHanna Grider against

the defendants. Finding of fact 13 read, in part:

> It is also significant that Ms. Grider owned a majority of the
> partnership control rights and *defendants persuaded the court to allow their*
> [*attorney*] *fees to be paid by the partnership store, while the case was
> pending.* At the same time, Ms. Grider's fees were not paid!

CP (#37433-5-III) at 256 (emphasis added). On February 17, the superior court also

signed a judgment and decree.

On February 28, Ian Cairns filed an amended notice of association of counsel to

represent Christopher Quinn and Christian Pang, in addition to his representation of

Alkaloid. On March 2, 2020, JoHanna Grider reassumed control of the partnership store

6

and commenced examining the financial records. She discovered that, during the course of the trial, the partnership paid Thor Hoyte $217,763 from marijuana sales revenue during the time window of November 8, 2017 through January 20, 2020. The records lacked any contracts, invoices, or other documentation supporting the fee payments.

JoHanna Grider also discovered, from the partnership financial records, that the partnership, in October 2019, after the superior court entered the first findings of fact and conclusions of law, paid Ian Cairns two payments totaling $50,000. On February 18, 2020, the day that the superior court entered the second amended findings of fact and conclusions of law and second amended judgment and decree, Cairns received another payment from the partnership store of $20,000. Grider found no contracts, invoices, or other documentation supporting the fee payments to Cairns.

On March 3, 2020, JoHanna Grider's counsel sent a letter to Ian Cairns advising him that he acted in derogation of Grider's earlier request to cease and desist all activities purportedly taken on behalf of Alkaloid. The letter also requested disclosure of all documents related to his purported representation of Alkaloid. On March 4, Cairns responded. He rejected Grider's request and asserted that Grider based her demands on the erroneous assertion that Alkaloid Inc. is an asset of the partnership. Cairns wrote that, although

> the court found that the license held by Alkaloid Inc. is a partnership asset, it did not find that Alkaloid Inc. is a partnership asset or that Ms. Grider controls the corporation. . . . [Therefore] Alkaloid Inc. is entitled to counsel of its choice . . . [and] [n]o order or judgment authorizes Ms. Grider

7

. . . to demand the disgorgement of funds [Alkaloid's] attorneys have been
paid.

CP (#37433-5-III) at 2913. On March 4, defendants appealed the superior court's

judgment in favor of JoHanna Grider.

On June 9, 2020, a frustrated JoHanna Grider filed a motion to compel

disgorgement of attorney fees paid from partnership funds. The superior court denied

Grider's motion without prejudice. The court commented:

> [I]t seems to me that the money that was used to pay the fees really
> is the partnership's money, but it was appropriated by Quinn and Pang
> through Alkaloid, again *using Alkaloid to manipulate* the circumstances.

Report of Proceedings (RP) (June 26, 2020) at 4, Grider v. Quinn, No. 37433-5-III

(Wash. Ct. App.) (emphasis added). The superior court invited Grider to renew the

motion with authority allowing the court "to recover this money that really should have

been in the partnership and available to Ms. Grider but was *wrongfully paid out* by

whoever was controlling Alkaloid; Quinn, and Pang, maybe others." (RP) (June 26,

2020) at 5 (emphasis added).

In August, 2020, JoHanna Grider renewed her motion to compel disgorgement of

attorney fees. The motion argued the court had inherent equitable powers to compel the

return of the partnership funds. During an oral ruling, the superior court commented:

> An *additional breach of fiduciary duty* was the paying out of this
> $70,000 when they knew that after two years of litigation, numerous
> motions, whatever it was, a four-day bench trial, written closings, proposed
> findings, and careful deliberation that I found that the partnership held the
> license that was a cornerstone of the initiation of the partnership and Ms.
> Grider had 33 percent and Mr. Quinn had 25 percent and because Mr. Pang

8

transferred his interest to others under the partnership act, he lost the ability
to vote on a distribution like that.

RP (#37433-5-III) (Sep. 25, 2020) at 19-20. The court added: "This whole case is very concerning with the way these gentlemen treated Ms. Grider." RP (#37433-5-III) (Sep. 25, 2020) at 20. The superior court, however, regretfully denied the motion without prejudice. The written order read:

> "[although the payment of fees is] yet another instance of [Quinn and Pang] *violating their fiduciary duties*, the Court does not believe it has the authority to add to its Second Amended Judgment and Decree at this time.

CP (#37433-5-III) at 3105 (emphasis added).

During oral argument before this court, defendants' counsel represented that, after he received notice of the dispute regarding payment of attorney fees, he restored to his firm's trust account the amount of $14,000 in fees earned. Therefore, the entire $70,000 in payments remain in the trust account. Counsel also conceded that all of the $70,000 amount arose from revenues garnered by the marijuana business.

We recently issued a ruling in the related appeal. We affirmed the superior court's monetary judgment in favor of JoHanna Grider, but reversed the superior court's declaration of JoHanna Grider being the controlling partner. We remanded to the superior court to decide whether to impose a receivership in lieu of placing Grider in control of the marijuana business. We granted Grider reasonable attorney fees on appeal because of the oppressive and inequitable conduct of the defendants.

9

LAW AND ANALYSIS

On appeal, JoHanna Grider seeks return of the $70,000 paid to Ian Cairns after the August 2019 findings of fact and conclusions of law. She argues that, despite the superior court not yet signing a judgment, defendants knew that, based on the entered findings of fact and conclusions of law, the partnership owned the marijuana retail store and that she controlled the affairs of partnership. Therefore, no one else had authority to authorize the payment. She relies on the superior court's equitable powers to require that Cairns, Christopher Quinn, and/or Christian Pang return the fees to the partnership. She also contends that the July 23, 2018 restraining order prohibited Quinn and Pang from using marijuana revenues for personal expenses, which included payment of attorney fees.

The defendants respond that findings of fact and conclusions of law lack any binding effect. Since the superior court had yet to enter a judgment or decree declaring JoHanna Grider to control partnership affairs and declaring the partnership to own the marijuana business, Alkaloid still controlled the business. According to defendants, Alkaloid remained free to use marijuana revenues as it saw fit including paying its attorney fees and fees of Christopher Quinn and Christian Pang. Alkaloid violated no order by paying the fees because the superior court, in its July 23, 2018 order, excluded the payment of fees from the restraining order. The defendants also argue that the superior court lacked any authority to require repayment of the fees to the partnership,

particularly since the case pended before this appellate court when Grider brought her motion.

We decline to address most of the arguments of the parties. We can resolve this appeal in a more narrow and direct manner. We hold that the superior court had authority, despite the appeal, and should have exercised that authority to require return of the attorney fees. Regardless of whether JoHanna Grider controlled the daily operations of the marijuana retail business, the partnership never approved of the payment of fees. Regardless of whether a court order declared the partnership to own the business, the partnership owned the marijuana business. A court in equity may require that money taken from a partnership without authorization by a partner be returned to the partnership. A court in equity may also require a partner to return funds taken from the partnership for his own benefit.

## Return of Money

We first address whether the law supports an order compelling the return of the $70,000 in attorney fees paid to Ian Cairns by Alkaloid. After answering this question in the affirmative, we concentrate on whether the superior court possessed authority to enter such an order during the pendency of the appeal by the defendants of its rulings in favor of JoHanna Grider.

In its ruling, the superior court declared that Christopher Quinn and Christian Pang violated additional fiduciary duties when usurping marijuana revenues owned by the partnership to pay Alkaloid's and their personal attorney fees and costs. The undisputed

11

evidence establishes this finding.  The law also supports a ruling of a breach of fiduciary duty by use of the funds to pay attorney fees, and the law imposed a trust on the marijuana revenues, such that the fees must be returned to the partnership.

When a party misappropriates property of another to whom that party owes a fiduciary duty, the malefactor is liable for the misappropriated property as well as for the profits realized therefrom even if the wrongdoer has an interest in the misappropriated property.  59A AM. JUR. 2D *Partnership* § 390 (2021).  Partners are liable to each other for the fruits of misappropriated partnership property.  *Thompson v. Grantham*, 489 So. 2d 414 (La. Ct. App. 1986); 59A AM. JUR. 2D *Partnership* § 390 (2021).  The law imposes a constructive trust as a remedial device over the misused property.  59A AM. JUR. 2D *Partnership* § 390 (2021).  Since partners stand in a fiduciary relationship one to the other, any rights obtained by one partner for his individual benefit, to which rights the copartnership held ownership, is held in trust for the copartnership.  *Stewart v. Ulrich*, 117 Wash. 109, 114, 201 P. 16 (1921); *Shrader v. Downing*, 79 Wash. 476, 477, 140 P. 558.  *Textile Mills, Inc. v. Colpack*, 264 Ala. 669, 89 So.2d 187 (1956); *Crone v. Crone*, 180 Ill. 599, 54 N.E. 605 (1899); *In re Curran*, 157 B.R. 500, 509-10 (Bankr. D. Mass. 1993).

The one partner must account to his copartners for the property taken.  *Stewart v. Ulrich*, 117 Wash. 109, 114, 201 P. 16 (1921).  Members of a partnership, no more than officers of a corporation, cannot give away, or appropriate property or funds for their own use.  *Textile Mills, Inc. v. Colpack*, 264 Ala. 669, 673 (1956).  One partner cannot dispose

of the partnership property in payment of his individual debt without the consent of his copartners, either express or by necessary implication. *Lovelace v. Reliable Garage*, 33 Ga. App. 289, 125 S.E. 877, 877 (1924); *Ulrich v. McConaughey*, 63 Neb. 10, 88 N.W. 150, 151 (1901), *modified*, 69 Neb. 773, 96 N.W. 645 (1903). The fiduciary relation among partners prohibits all forms of trickery, secret dealings and preference of self in matters relating to and connected with a partnership and joint venture. *Kehoe v. Wildman, Harrold, Allen & Dixon*, 387 Ill. App. 3d 454, 899 N.E.2d 1177, 1190 (2008).

The superior court should right the wrong committed by Christopher Quinn and Christian Pang against the partnership and their partner, JoHanna Grider. The trial court should exercise its authority liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979); *White v. Holm*, 73 Wn.2d 348, 351, 438 P.2d 581 (1968). In equity, a judicial officer may fashion broad remedies to mete substantial justice to the parties and put an end to litigation. *Hough v. Stockbridge*, 150 Wn.2d 234, 236, 76 P.3d 216 (2003). Although the superior court found that it did not have authority, "the trial court is not powerless to fashion and impose appropriate sanctions under its inherent authority to control litigation." *In re Firestorm 1991*, 129 Wn.2d 130, 139, 916 P.2d 411 (1996).

The defendants argue that Alkaloid could utilize the marijuana revenues for any purpose, including payment of attorney fees owed by it, Christian Pang, or Christopher Quinn until the superior court entered its judgment in February 2020. The defendants

13

impliedly argue that no partnership existed and Alkaloid legally controlled the operations of the marijuana retail store until the superior court entered the judgment and decree even despite the entry eight months earlier of findings of fact and conclusions of law granting JoHanna Grider control of the business. We disagree. The trial court's rulings did not create the partnership. The trial court rulings confirmed the prior existence of the partnership, the partnership's ownership of the marijuana retail store and the license to sell marijuana, and the partnership's control of the marijuana operation.

The defendants may argue that the superior court's July 23, 2018 order, confirmed by later conclusions of law, authorized use of marijuana revenue to pay attorney fees and costs. The superior court declared that it did not wish to interfere in the payment of fees. Nevertheless, the July 2018 order only controlled before trial. The order expressly read "pending trial." Trial had ended when the defendants transferred the funds to Ian Cairns.

In the related appeal, we reversed the superior court's declaration of JoHanna Grider as the controlling partner of the partnership. The defendants, in anticipation of the reversal, contend that this appeal falls moot. We disagree. Regardless of who controls the partnership, the partnership never authorized the payment.

The question might rise as to whether Ian Cairns must directly repay the fees as opposed to Christopher Quinn and Christian Pang reimbursing the partnership. Nevertheless, Cairns and his law firm have agreed to abide by any ruling of this court. Cairns asserts no interest in the funds. Thus, we order Cairns and his law firm to return the funds to the partnership. We commend Cairns for his professionalism in placing all

14

of the fees, including fees earned, in a trust account when notified of the dispute and his

professionalism when foregoing the argument that he need not be bound by any ruling.

Superior Court Authority during Appeal

RAP 7.2 governs the authority of a superior court while a case pends before the

court of appeals. The rule reads in relevant part:

> (e) Postjudgment Motions and Actions to Modify Decision. The
> trial court has authority to hear and determine (1) postjudgment motions
> authorized by the civil rules, the criminal rules, or statutes, and (2) actions
> to change or modify a decision that is subject to modification by the court
> that initially made the decision. The postjudgment motion or action shall
> first be heard by the trial court, which shall decide the matter. If the trial
> court determination will change a decision then being reviewed by the
> appellate court, the permission of the appellate court must be obtained prior
> to the formal entry of the trial court decision.

Two Washington decisions illustrate the authority of the superior court to act

during an appeal and the application of RAP 7.2. In *In re Marriage of Burrill*, 113 Wn.

App. 863, 56 P.3d 993 (2002), the husband brought a postjudgment motion before the

superior court. He sought damages to the house awarded by the superior court in the

marital dissolution. In the meantime, the wife had appealed the superior court ruling.

Before the husband took possession, the wife stripped the residence of appliances and

fixtures, even window coverings and light switch covers. Cat feces ornamented the rugs.

The superior court awarded the husband $3,000. On appeal, the wife argued that the

superior court lacked jurisdiction to enter a postjudgment order concerning the damage to

the abode. This court disagreed.

In *State v. J-R Distributors, Inc.*, 111 Wn.2d 764, 765 P.2d 281 (1988), the State of Washington appealed a ruling made by the superior court requiring the return of illegally seized property. The superior court issued its ruling while the suit lay pending before the Supreme Court. The State argued before the Supreme Court that the superior court lacked jurisdiction to issue the order while the case pended appeal unless the defendant first obtained permission from the Supreme Court. Based on RAP 7.2, the court disagreed. The Supreme Court noted that RAP 7.2 changed the earlier practice that the movant always file a motion in the appellate court seeking permission to file a postjudgment motion in the superior court. RAP 7.2 eliminates unnecessary work for the appellate court. RAP 7.2 intended to grant more authority to the superior court. Because the superior court's ruling did not affect the decision already on review, the defendant did not need to seek Supreme Court approval before filing the postjudgment motion.

Any superior court order requiring reimbursement of the partnership of the $70,000 of attorney fees paid does not affect the case on review. Therefore, the superior court should have granted the motion to disgorge.

In this appeal, the defendants do not contend that JoHanna Grider needed to file a separate lawsuit to seek the return of funds. Christopher Quinn and Christian Pang's payment of fees from the marijuana business continued an ongoing and egregious series of breaches of fiduciary duty echoing the allegations in Grider's complaint.

Attorney Fees on Appeal

JoHanna Grider requests an award of reasonable attorney fees on appeal. Because she prevails and because of the inequitable conduct of the defendants, we award her reasonable attorney fees on appeal against the three defendants. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 798, 557 P.2d 342 (1976); *Green v. McAllister*, 103 Wn. App. 452, 468,14 P.3d 795 (2000); *Guntle v. Barnett*, 73 Wn. App. 825, 836, 871 P.2d 627 (1994), *adhered to on reh'g*, 93 Wn. App. 1067 (1999).

CONCLUSIONS

We remand to the superior court to enter an order compelling the return to the partnership of the $70,000 in fees paid to Ian Cairns. We grant JoHanna Grider reasonable attorney fees on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Lawrence-Berrey, J.

17