FILED
COURT OF APPEALS
DIVISION II

2014 NOV -4 AM 10: 03

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43737-6-II |
| Respondent, | |
| v. | |
| THOMAS DEAN ESPEY, | PART PUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Following three separate trials, Thomas Espey appeals from his jury convictions for first degree burglary (count II),[1] first degree unlawful possession of a firearm (count III),[2] and unlawful possession of a controlled substance (count V).[3] He argues that (1) the vehicle search warrant lacked probable cause, (2) the prosecutor improperly relied on Espey's silence and his consultation with an attorney as substantive evidence of guilt, and (3) the trial court

---

[1] RCW 9A.52.020(1)(b).

[2] RCW 9.41.040(1)(a).

[3] Former RCW 69.50.4013(1) (2003).

violated his public trial rights. In his statement of additional grounds, he further argues that the evidence was insufficient to sustain his conviction for first degree burglary.

In the published portion of the opinion, we agree with Espey that the State improperly commented on Espey's constitutional right to counsel by relying on his consultation with an attorney to discredit him and, accordingly, we reverse his first degree burglary conviction (count II). In the unpublished portion of this opinion, we agree with Espey that the State violated his constitutional protection against unreasonable search and seizure and we reverse his first degree unlawful possession of a firearm conviction (count III) and unlawful possession of a controlled substance conviction (count V). In addition, we reject Espey's insufficiency of the evidence contention as to count II and we do not reach Espey's public trial or right to silence arguments. We reverse and remand count II for retrial, and reverse and dismiss counts III and V.

## FACTS

In April 2011, Espey, Mario Falsetta, and two unidentified men entered the home of Sonny Campbell. Espey told Campbell, "'You know why I'm here. You know what time it is.'" Report of Proceedings (RP) (Mar. 19, 2012) at 23. He then put on a pair of gloves and grabbed Campbell by the collar. Campbell fell into his bathtub, where three of the four men began to beat him. During the beating, Campbell's assailants accused him of drugging and raping Katie Bass, a mutual acquaintance of Campbell and Espey. The bathroom was crowded and the men took turns hitting Campbell. Espey threw a punch "here and there." RP (Mar. 19, 2012) at 25.

During the assault, Falsetta broke into the bedroom where Campbell's girlfriend, Kimberly Bischof, was hiding. Falsetta took a cell phone and a bag containing money and drugs from the bedroom; one of the unidentified men took a paintball gun. In addition, a laptop computer and

various pieces of jewelry were stolen. Finally, Espey and his three accomplices departed in a truck. Campbell was left with injuries to his head and neck.

Campbell contacted the police, identifying Espey as the "'ringleader' of the incident." Clerk's Papers (CP) at 22. The State obtained an arrest warrant for Espey. Detective Jason Laliberte of the Pierce County Sheriff's Department spent a month and a half attempting to serve the arrest warrant, during which period he attempted to contact Espey approximately 25 times. The search for Espey was particularly difficult because Espey was aware the police were looking for him and took "extreme measures to elude capture . . . by distancing himself from co-participants in this case and avoiding areas of which he [was] known to frequent." CP at 22. During this time, Espey spoke to Falsetta's attorney, Chip Mosley, who checked for outstanding warrants for Espey. Espey also spoke to an attorney named Gary Clower, who advised him to make a video statement and then turn himself in to police. Espey did not follow this advice and did not retain Clower.

On May 25, 2011, police located Espey driving a Cadillac registered to another person. Police followed Espey to a casino where he retrieved a shirt from the Cadillac's trunk. Police continued to follow Espey as he drove to a gas station to use the bathroom, at which point they arrested him. Espey agreed to a recorded interview with police during which he stated that he had gone to Campbell's house by himself, he was there only to discuss Bass, he had been invited inside, he had not hit Campbell, and he had not taken anything.

No. 43737-6-II

The Pierce County Prosecuting Attorney's Office charged Espey with five counts: first degree robbery (count I),[4] first degree burglary (count II),[5] first degree unlawful possession of a firearm (count III),[6] possession of a stolen firearm (count IV),[7] and unlawful possession of a controlled substance (count V).[8] Espey had three separate jury trials. At the first trial, he was convicted of unlawful possession of a controlled substance (count V). At the second trial, he was convicted of first degree burglary (count II). At the third trial, he was convicted of first degree unlawful possession of a firearm (count III). He alleges error in each trial.

At the second trial, the prosecutor argued in closing that the jury should consider Espey's statement to police in light of the time he had spent in flight and his consultation with attorneys:

> Where I suggest you start is, start with his own recorded statement that he gave to the police. Keep in mind that he had been on the run for approximately six weeks. Keep in mind that he had already consulted with two attorneys, Chip Mosley and Gary Clower. He had lots of time to figure out what story he was going to tell the police.
> If you have ever dealt with somebody who is a good liar, they have a pattern. What they do is this: Admit everything that you can't [sic] admit without getting into trouble and only deny the stuff that you have to. . . .
> You heard Tom Espey's story in there. I'm not guilty of burglary because I was invited into the house. I'm free. You can't get me guys. I'm not guilty of robbery because I didn't personally take anything. I'm free. Okay, I did everything else, but guess what? You can't touch me. And he is wrong. He is wrong because it doesn't understand what it means to be an accomplice. He doesn't understand what accomplice liability means.

---

[4] RCW 9A.56.190, .200(1)(a)(iii).

[5] RCW 9A.52.020(1)(b).

[6] RCW 9.41.040(1)(a).

[7] RCW 9A.56.140(1), .310(1).

[8] Former RCW 69.50.4013(1).

4

RP (Mar. 20, 2012) at 27-28. The prosecutor reiterated that "[he] talked to the lawyers, Mosley and Clower. He told them why he went [to Campbell's home]. He didn't deny going." RP (Mar. 20, 2012) at 28. Espey did not object at any time during closing.

Juries convicted Espey of count V (unlawful possession of a controlled substance) in the first trial, count II (first degree burglary) in the second trial, and count III (unlawful possession of a firearm) in the third trial.[9] He timely appealed.

## ANALYSIS

### I. IMPROPER COMMENT ON RIGHT TO COUNSEL

Espey alleges that during the second trial, the prosecutor's closing argument improperly relied on the fact that Espey consulted with two attorneys during his flight. Espey also argues that the prosecutor violated his state and federal constitutional right to counsel. We agree that the prosecutor improperly commented on Espey's right to counsel and that this error was not harmless. Accordingly, we reverse Espey's first degree burglary conviction.[10]

### A. WAIVER

As a threshold matter, we must determine whether Espey waived his argument here by failing to object at trial to the prosecutor's comments or to request a curative instruction. If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *State v. Stenson*, 132 Wn.2d 668, 726-27, 940 P.2d 1239 (1997) *cert.*

---

[9] The second jury acquitted Espey on count I (first degree robbery). The court dismissed count IV (possession of a stolen firearm) on Espey's motion.

[10] Accordingly, we do not address Espey's arguments concerning his right to remain silent.

*denied*, 523 U.S. 1008 (1998). Under this heightened standard, the defendant must show that (1) "no curative instruction would have obviated any prejudicial effect on the jury" and (2) the misconduct resulted in prejudice that "had a substantial likelihood of affecting the jury verdict." *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011). A defendant's failure to object to an improper remark on his constitutional right to silence does not waive the issue on appeal so long as the remark amounts to a manifest error. *See* RAP 2.5(a)(3).

Having failed to object at trial or request a curative instruction, Espey has waived the error unless we find the prosecutor's comments "so flagrant and ill-intentioned" that no instruction could have cured the resulting prejudice. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)). In making this determination, the courts are to "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

In order to determine waiver we must first analyze the prejudice Espey suffered, and therefore we must preview the merits of Espey's claim.

A defendant has a right to counsel under the state and federal constitutions. *See* U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22. Several federal courts have held that a prosecutor violates this right by using "an accused's decision to meet with counsel, even shortly after the incident giving rise to a criminal indictment," to imply guilt or suggest that the defendant hired an

attorney to concoct an alibi.[11] *Sizemore v. Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990). No prosecutor may employ language which denigrates the right of a criminal defendant to retain the counsel of his choice, or otherwise limits the fundamental due process right of an accused to present a vigorous defense. *Sizemore*, 921 F.2d at 671; *see also United States v. McDonald*, 620 F.2d 559, 562-64 (5th Cir. 1980); *United States ex rel. Macon v. Yeager*, 476 F.2d 613, 615 (3d Cir.), *cert. denied*, 414 U.S. 855 (1973).

We agree with the reasoning of these decisions. The State "strike[s] at the core of the right to counsel" when it seeks to create an inference of guilt out of a defendant's decision to meet with counsel, even if the defendant meets with counsel shortly after the alleged crime takes place. *Sizemore*, 921 F.2d at 671. That is precisely what the State did when it argued that Espey's meetings with attorneys helped him to formulate the account he gave to police upon arrest. *See* RP (Mar. 20, 2012) at 27 ("Keep in mind he had already consulted with two attorneys, Chip Mosley and Gary Clower. He had lots of time to figure out what story he was going to tell the police."). That is, the State argued that because Espey exercised his constitutional right to counsel, he was lying. The State thereby improperly commented on and penalized Espey's exercise of the right to counsel, a right guaranteed by the state and federal constitutions. U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22. *See also Sizemore*, 921 F.2d at 671; *McDonald*, 620 F.2d at 562-64; *Macon*, 476 F.2d at 615.

---

[11] While no Washington Supreme Court authority is directly on point, our Supreme Court discussed prosecutorial comment on the right to counsel in *State v. Yates*, 161 Wn.2d 714, 779, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008). Although the court did not hold that Yates's right to counsel had been violated, it recognized the possibility of an improper inference "that, because he had counsel, he was guilty." *Yates*, 161 Wn.2d at 779.

This error was both incurable and substantially likely to affect the jury verdict because it attacked Espey's credibility, which was the dispositive question in this case. The State's evidence consisted of (1) Espey's statement to police in which he admitted entering Campbell's home and grabbing him, (2) testimonial and photographic evidence of Campbell's injuries, and (3) the testimony of both Campbell and Bischof, who stated that Espey and three others entered their home without announcing themselves or asking for permission. Campbell and Bischof further testified that Espey and the three other intruders had come into the home together and left together in Espey's truck. Both witnesses identified Espey and Falsetta as the leaders of the group, stating that the other men "were just duck and dive or dodge," RP (Mar. 19, 2012) at 27, and were "tagging along or something. . . . It didn't seem like they knew what they were doing." RP (Mar. 19, 2012) at 64.

On the other hand, Espey presented the testimony of Campbell's then-roommate Donny Resnick, who testified that Campbell invited Espey's group in, that he had not seen or heard any fighting, and that Espey's group was not carrying anything when they left. Espey also pointed to his own prior statement where he claimed he had not intended to rob Campbell, only to talk with him. In the same statement, Espey emphasized that his accomplices acted on their own and that he did not even know anything had been stolen until a couple days later.

Aside from the photographs of Campbell's injuries, the only evidence either side presented was testimonial. Therefore, the entire trial turned on a determination of credibility: whether

Campbell and Bischof were telling the truth or rather Resnick and Espey.[12] The prosecution's comments, brief as they were, were designed to weigh on that exact question by framing Espey's story as false or at least incomplete. RP (Mar. 20, 2012) at 27 ("If you have ever dealt with somebody who is a good liar, they have a pattern. What they do is this: Admit everything that you can't [sic] admit without getting into trouble and only deny the stuff that you have to."). The prosecution created an inference that Espey was lying because he consulted with attorneys, and this improper inference went to the central issue of the case. In the specific circumstances of this case, we find that the prosecutor's remarks were too prejudicial to be remedied by a curative instruction, and had a substantial likelihood of affecting the jury verdict. Accordingly, Espey has not waived the issue and we proceed to the merits.

## B. NOT HARMLESS ERROR

As we note above, the State improperly commented on Espey's right to counsel by urging the jury to conclude that Espey was lying because he had met with an attorney. But the question remains whether the error was harmless. When a prosecutor's improper argument directly violates a constitutional right, we apply the constitutional harmless error standard. *See, e.g., State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996) (prosecutor commented on defendant's pre-arrest

---

[12] The State argued that the jury could convict Espey even if it believed his story—Espey said he had not personally taken anything but even if that were true, he would still be liable as an accomplice. *See* RP (Mar. 20, 2012) at 30 ("When you look at Sunny [sic] Campbell's testimony and Kimberly Bischof's testimony, their testimonies don't really differ that much with what Mr. Espey, himself, has to say."). But Espey's account differed from Campbell's in important ways. Espey told the police that he was invited into Campbell's home, while Campbell testified that Espey's group walked directly in without permission. Espey told the police that he was "by [himself] in [his] truck," Ex. C at 13, while Campbell testified that Espey and the three other men left together in Espey's truck.

silence); *State v. Fricks*, 91 Wn.2d 391, 396-97, 588 P.2d 1328 (1979) (prosecutor commented on defendant's post-arrest silence).[13] "A constitutional error is harmless only if the reviewing court is convinced beyond a reasonable doubt that any reasonable jury would reach the same result absent the error and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt." *State v. Burke*, 163 Wn.2d 204, 222, 181 P.3d 1 (2008) (citing *Easter*, 130 Wn.2d at 242). Because the prosecutor's closing argument constituted an impermissible comment on Espey's exercise of a constitutional right, the State bears the burden of showing the error was harmless. *Easter*, 130 Wn.2d at 242.

Under these facts, the State fails to carry its heavy burden of showing the error was harmless. As described above, Espey's credibility was the central issue in this case, where the jury was offered a choice between two versions of events: Campbell's and Bischof's, or Espey's and Resnick's. Again, the State's comments on Espey's meetings with counsel were designed to discredit Espey's and Resnick's story. *See* RP (Mar. 20, 2012) at 27 ("Keep in mind he had already consulted with two attorneys, Chip Mosley and Gary Clower. He had lots of time to figure out what story he was going to tell the police."). But even after taking the prosecution's comments into consideration, the jury acquitted Espey of assault, which indicates that the jury may not have believed *everything* Campbell and Bischof said. Absent the prosecution's improper reliance on Espey's meetings with counsel, there is a reasonable doubt that the jury may have reached a

---

[13] Our analysis is different when the prosecutor only indirectly violates a constitutional right, such as by misstating the State's burden of proof. *Emery*, 174 Wn.2d at 757-58; *State v. Warren*, 165 Wn.2d 17, 26 n.3, 195 P.3d 940 (2008), *cert. denied*, 556 U.S. 1192 (2009).

different result. Accordingly, we reverse the guilty verdict on the charge of first degree burglary (count II) and remand for a new trial.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## II. SEARCH WARRANT

Espey argues that the search warrant for the Cadillac he was driving when arrested was invalid because it lacked probable cause to believe that evidence of criminal activity would be found in the car. We agree that the warrant was invalid and that the gun and methamphetamine seized from the Cadillac should have been excluded at Espey's trials for unlawful possession of a firearm and unlawful possession of a controlled substance. Accordingly, we reverse Espey's convictions for unlawful possession of a firearm (count III) and unlawful possession of a controlled substance (count V).

## A. FACTS

Upon arresting Espey, the police impounded the Cadillac he was driving so they could obtain a search warrant and search the vehicle. The affidavit supporting the search warrant stated that Espey was "avoiding areas of which he is known to frequent" in order to evade police, but the affidavit does not mention the Cadillac except to note that the police located Espey "driving the listed vehicle." CP at 22-23. Upon reviewing the affidavit, a magistrate issued a warrant to search the Cadillac for the stolen items, receipts, or documents relating to the stolen items, weapons and ammunition, photographs, recording devices, or latent prints. Upon executing the warrant, the

police found a handgun and ammunition, documents in Espey's name, methamphetamine, electronic scales, and a glass pipe.

At a pretrial suppression hearing, Espey moved to suppress the evidence retrieved from the Cadillac. He argued that the warrant was stale since nearly two months had passed between the alleged assault and robbery and the issuance of the search warrant, and that the warrant lacked probable cause because there was no nexus between the criminal activity and the Cadillac. The trial court denied the motion, reasoning that Espey would probably have kept the stolen items with him and, as he was in flight, he would probably have kept any possessions in his car. Subsequently, the State introduced the items found during the search of the Cadillac against Espey at trial.

## B. STANDARD OF REVIEW

We generally review a magistrate's issuance of a search warrant under an abuse of discretion standard. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008) (citing *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004)). We give great deference to the magistrate's decision. *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995); *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994); *State v. J-R Distribs., Inc.*, 111 Wn.2d 764, 774, 765 P.2d 281 (1988). Yet if the affidavit offers no "substantial basis for determining probable cause," we cannot defer to the magistrate. *State v. Lyons*, 174 Wn.2d 354, 364, 275 P.3d 314 (2012).

At a suppression hearing, the trial court acts in an "appellate-like capacity." *Neth*, 165 Wn.2d at 182 (citing *State v. Murray*, 110 Wn.2d 706, 709-10, 757 P.2d 487 (1988)). Because the trial court performs the same appellate function that we do, we do not give the trial court the same deference we give to the issuing magistrate. Rather, the trial court's assessment of probable cause

to support a warrant is a legal conclusion that we review de novo. *Neth*, 165 Wn.2d at 182 (citing *State v. Chamberlin*, 161 Wn.2d 30, 40-41, 162 P.3d 389 (2007)).

A magistrate issues a search warrant only if there is probable cause to believe the defendant is involved in criminal activity and that evidence of the criminal activity may be found in the place to be searched. *Neth*, 165 Wn.2d at 182 (citing *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999)). The magistrate is entitled to make reasonable inferences from the facts stated in the affidavit. *Maddox*, 152 Wn.2d at 505. But the magistrate may not issue a search warrant where the affidavit contains *no* facts to support the issuance of the warrant. *Lyons*, 174 Wn.2d at 363. A magistrate may not issue a search warrant based on bare "suspicion or conjecture," *State v. Chenoweth*, 160 Wn.2d 454, 476, 158 P.3d 595 (2007), or upon "inference alone." *Lyons*, 174 Wn.2d at 364.

### C. NEXUS

Espey argues that the warrant affidavit fails to establish that Espey used the Cadillac in connection with the criminal activity. Without "'a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched,'" there is no probable cause to support a warrant. *Thein*, 138 Wn.2d at 140 (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)).

While Espey was driving the Cadillac when he was *arrested*, he was not driving the Cadillac when he *committed* the alleged crimes—indeed, the affidavit fails to show that a Cadillac was present at the scene of the crime. Rather, the affidavit states that on the day Espey and his accomplices confronted Campbell, Espey was driving a "blue 80's Chevy truck." CP at 20. The affidavit fails to establish that the Cadillac was connected to the crimes. Furthermore, there was

13

no showing that Espey owned or even controlled the Cadillac before his arrest.[14] The State suggests that Espey may have lived in the Cadillac while he was in flight from the police. But this theory was not articulated in the affidavit and, even if it was, criminal activity alone does not create probable cause to search a defendant's residence. *Thein*, 138 Wn.2d at 148 (citing *State v. Dalton*, 73 Wn. App. 132, 140, 868 P.2d 873 (1994)).

Here, the facts that Espey drove the Cadillac six weeks after the criminal activity and that he may have lived out of it may tie Espey *himself* to the car, but they do not create the requisite nexus between the criminal activity and the car. Division Three of this court has observed,

> "Here, the question is whether, *assuming a not too long passage of time* since the crime, it is proper to infer that the criminal would have the fruits of his crime in his residence, vehicle or place of business."

*State v. McReynolds*, 104 Wn. App. 560, 569, 17 P.3d 608 (2000) (emphasis added) (quoting WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 3.7(d), at 381-84 (3d ed. 1996)), *review denied*, 144 Wn.2d 1003 (2001). But here a long period of time *did* pass between the crimes and Espey's arrest. Espey's six weeks in flight gave him ample time to dispose of the stolen items, thus weakening any nexus between the criminal activity and the Cadillac.

The State argued that even if Espey sold or otherwise disposed of the stolen items, there was probable cause to believe he would have receipts or other documentation of the disposal. Our Supreme Court rejected a similar argument in *Thein* where the State also argued that receipts or accounts of drug sales might be found in the defendant's home. 138 Wn.2d at 139. The *Thein*

---

[14] Espey had permission from the registered owner to use the vehicle. Yet this fact was not included in the affidavit.

decision makes clear that the mere *possibility* of finding records of criminal activity does not create the necessary nexus to support a search warrant.

The nexus may also be weakened where there are other places that police could reasonably find the evidence sought. *Thein*, 138 Wn.2d at 150. Detective Laliberte indicated in the affidavit that he knew of "several locations that [Espey] spends the majority of his 'sleeping' hours." CP at 22. It was just as probable that the stolen items would be stashed in one of these locations as it was that they would be kept in the car that Espey was driving.

The State failed to show any direct connection between the criminal activity and the Cadillac. At most, the State showed a connection between Espey and the crimes, and between Espey and the Cadillac. Especially given the lengthy passage of time, we hold that the magistrate abused her discretion in issuing the search warrant because the required nexus between the vehicle and the criminal activity was absent.[15]

## D. CONCLUSION

Evidence that Espey (1) had allegedly stolen the items, (2) had been a fugitive for some time, and (3) had driven the Cadillac six weeks after the crimes were committed do not provide a substantial basis to believe that evidence of the crimes could be found in the Cadillac. Consequently, the search warrant lacked probable cause. For this reason we hold that the search warrant was invalid, and the firearm and methamphetamine retrieved from the Cadillac were unlawfully seized pursuant to the invalid warrant and were inadmissible evidence. Accordingly,

---

[15] Accordingly, we do not reach Espey's staleness argument.

15

we reverse Espey's convictions for unlawful possession of a firearm (count III) and possession of a controlled substance (count V) and remand for dismissal.[16]

### III. SUFFICIENCY OF THE EVIDENCE

In his statement of additional grounds, Espey argues that the evidence was insufficient to sustain his conviction for burglary because the State did not adequately prove that he intended to commit a crime inside Campbell's home nor that he was liable as an accomplice.[17] Espey's claims are meritless and we reject them.

Washington courts apply a deferential standard when analyzing sufficiency claims. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements beyond a reasonable doubt. *State v. Aten*, 130 Wn.2d 640, 667, 927 P.2d 210 (1996). That is, the reviewing court must treat all of the State's factual allegations and inferences as true. *State v. Lubers*, 81 Wn. App. 614, 618-19, 915 P.2d 1157 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)), *review denied*, 130 Wn.2d 1008 (1996). Under this deferential standard, the evidence was sufficient to sustain Espey's burglary conviction.

---

[16] Dismissal of the charges, rather than a new trial, is the proper remedy because the State cannot prove the possession charges without the improperly admitted evidence. *See, e.g., State v. Burnett*, 154 Wn. App. 650, 652-53, 228 P.3d 39 (2010); *State v. McCormick*, 152 Wn. App. 536, 544 n. 2, 216 P.3d 475 (2009), *review denied*, 172 Wn.2d 1007 (2011); *State v. Chacon Arreola*, 163 Wn. App. 787, 798, 260 P.3d 985 (2011), *rev'd on other grounds*, 176 Wn.2d 284, 290 P.3d 983 (2012).

[17] Although we reverse all of Espey's convictions, we address sufficiency of the evidence because if the evidence is insufficient to support the convictions, the double jeopardy clause prohibits a retrial. *State v. Hescock*, 98 Wn. App. 600, 604-05, 989 P.2d 1251 (1999).

Espey argues that the State failed to prove that he entered or remained in Campbell's home with intent to commit a crime as required by RCW 9A.52.020(1).[18] In Espey's view, there was no evidence of his intent to assault anyone or steal anything. Rather, the jury merely inferred from his entry and remaining in Campbell's home that he intended to commit a crime while there. *See* RCW 9A.52.040.[19] Espey argues that this statutory inference alone cannot sustain a conviction, pointing to *State v. Brunson*, 128 Wn.2d 98, 905 P.2d 346 (1995). There, our Supreme Court held that when a permissive inference is the "'sole and sufficient' proof of an element," the presumed fact (intent) must flow from the proven fact (unlawful entry) beyond a reasonable doubt. *Brunson*, 128 Wn.2d at 107 (quoting *Ulster County Court v. Allen*, 442 U.S. 140, 167, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979)). On the other hand, if circumstantial evidence also shows that the defendant intended to commit a crime, then the standard of proof is more likely than not. *Brunson*, 128 Wn.2d at 109.

Here, as in *Brunson*, the statutory inference was not the sole proof of Espey's intent to commit a crime. 128 Wn.2d at 109. The State also presented Campbell's and Bischof's testimony indicating that Espey actively participated in the assault on Campbell and that Espey's accomplices left with him, taking the stolen items. Because there was additional evidence of Espey's intent to

[18] "A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person." RCW 9A.52.020(1).

[19] "In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent." RCW 9A.52.040.

assault and steal, the jury was entitled to infer Espey's criminal intent so long as it found (1) that Espey unlawfully entered or remained in Campbell's residence and (2) Espey's intent more likely than not flowed from his unlawful entry or remaining.

Viewing the evidence in the light most favorable to the prosecution, the more likely than not standard is satisfied. Both Campbell and Bischof testified that Espey did not have permission to enter their home, i.e., that he entered unlawfully. At no point did either Campbell or Bischof tell Espey he could stay; thus, it was unlawful for him to remain in the home. Campbell testified that Espey initiated the assault immediately upon entering the home and finding him. This suggests that Espey entered Campbell's home at least for the purpose of committing assault. Sufficient evidence exists that Espey intended to commit a crime when he entered and subsequently remained in Campbell's home.

Espey also argues that the State failed to prove he acted under accomplice liability. As Espey points out, in order to convict a defendant as an accomplice, the prosecution must demonstrate more than mere presence and assent to the charged crime. *State v. Roberts*, 80 Wn. App. 342, 355, 908 P.2d 892 (1996); *State v. Luna*, 71 Wn. App. 755, 759, 862 P.2d 620 (1993). Viewing the evidence in the light most favorable to the prosecution, the prosecution met its burden. The State presented Campbell's testimony that Espey led the group into Campbell's home and "the other people were just duck and dive or dodge." RP (Mar. 19, 2012) at 27. Similarly, Bischof testified that Espey and Falsetta were leading the group while the other two men were "tagging along or something. . . . It didn't seem like they knew what they were doing." RP (Mar. 19, 2012) at 64. A rational jury could find from Campbell's and Bischof's testimony that Espey was the

18

leader of the group and played an active role in the charged crimes. Espey's arguments regarding the sufficiency of the evidence are without merit and we reject them.

All three of Espey's trials contain reversible error: the first and third trials relied on evidence improperly seized from the Cadillac, and during the second trial, the prosecutor improperly commented on Espey's consultations with counsel.[20] Accordingly, we reverse Espey's conviction for first degree burglary (count II), and remand for a new trial; we reverse his convictions for first degree unlawful possession of a firearm (count III), and unlawful possession of a controlled substance (count V), and remand for dismissal.

Johanson, C.J.
JOHANSON, C.J.

We concur:

Worswick, J.
WORSWICK, J.

Melnick, J.
MELNICK, J.

---

[20] Accordingly, we do not reach Espey's arguments that the prosecutor improperly commented on his right to remain silent or that his public trial rights were violated.